PER CURIAM
Defendant-Appellant Marcus G. Hahn was convicted of marijuana and firearms violations and sentenced to forty years’ imprisonment. In a second prosecution for sexual-exploitation offenses, Mr. Hahn entered into a plea agreement in which he waived the right to appeal his sentence. The district court, finding that it lacked discretion to issue the sexual-exploitation sentence concurrently with the marijuana- and-firearms sentence, . sentenced Mr. *1318 Hahn to twenty-four years to be served consecutively with the marijuana-and-firearms sentence. Mr. Hahn filed this appeal, arguing that the district court had discretion to sentence him to concurrent sentences. We hold that we have subject matter jurisdiction to hear this appeal; and, because the plea agreement constitutes an enforceable waiver of appellate rights, we DISMISS.
The Per Curiam opinion delivers the opinion of this Court with respect to Parts I, II, III.A, and III.B. A majority of this Court concurs in dismissing Mr. Hahn’s appeal. Part III.C of the Per Curiam opinion is an opinion concurring in the result.
I. BACKGROUND
We set this case for initial en banc review sua sponte to resolve an intra-Circuit split of authority concerning a matter of great public importance. See 28 U.S.C. § 46(c). The vast majority of federal criminal cases are resolved by plea agreements in which the defendant pleads guilty to some counts in exchange for concessions by the government. This system is an important tool in controlling the flood of criminal cases now inundating the federal courts. Many such plea agreements contain a waiver of the defendant’s right to appeal the district court’s sentence and the underlying conviction.
Given the importance of plea bargaining to the criminal justice system, we generally enforce plea agreements and their concomitant waivers of appellate rights. See, e.g., United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir.1998) (“A defendant’s knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable.”). We do so, in large part, because public policy strongly supports such waivers as they benefit defendants, the government, and society at large. See United States v. Elliott, 264 F.3d 1171, 1174 (10th Cir.2001). Nevertheless, we consistently hold that “a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court.” Id. at 1173 (quotation omitted).
These two competing goals — the need to enforce plea agreements and the need to subject sentencing decisions to review for miscarriages of justice[1] — arguably have led us to inconsistent conclusions. Cognizant of the need to enforce plea agreements, we have, on occasion, stated that we lack jurisdiction to hear appeals when a defendant has entered into a valid plea agreement containing a waiver of appellate rights. See, e.g., United States v. Rubio, 231 F.3d 709, 711 & n. 1 (10th Cir.2000) (stating that this court “would certainly overreach [its] jurisdiction to entertain [an] appeal when the plea agreement deprived [the defendant] of the right to appeal”). In other instances, instead of conducting a jurisdictional analysis, we have enforced waivers of appellate rights pursuant to principles of contract law tempered by public policy concerns. See, e.g., United States v. Black, 201 F.3d 1296, 1301 (10th Cir.2000) (“[A]greements waiving the right to appeal, like other contracts, are [evaluated] subject to certain public policy constraints.”). With these overarching tensions in mind, we turn to the issues in this case.
II. FACTS
On December 31, 1999, law enforcement officers executed a search warrant at Mr. Hahn’s home and found a sophisticated marijuana-growing operation and twenty-two loaded firearms. The officers also seized videotapes depicting Mr. Hahn sexually abusing young boys who appeared to be sedated, as well as a prescription for a *1319 “date rape” drug. Based on this evidence, the government charged Mr. Hahn in two separate federal cases, one involving the marijuana operation and related firearms possession and the other involving the sexual-exploitation offenses.
In the former prosecution, a jury found Mr. Hahn guilty of manufacturing marijuana in violation of 21 U.S.C. § 841, maintaining a place for the manufacture of marijuana in violation of 21 U.S.C. § 856, and two counts of possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). United States v. Hahn, 38 Fed.Appx. 553, 554 (10th Cir.2002). Mr. Hahn received concurrent sentences totaling five years for the two substantive marijuana offenses, a ten-year sentence for the first firearm conviction, and a twenty-five-year sentence for the second firearm conviction. The district court imposed the two firearms-related sentences consecutively to each other and to the five-year total sentence for the substantive marijuana convictions. Thus, in the marijuana-and-firearms case, Mr. Hahn received a total of forty years’ imprisonment, or 480 months, a sentence that this court affirmed on appeal. Id.
In the sexual-exploitation case, a grand jury indicted Mr. Hahn on seventeen counts relating to sexual exploitation and child pornography. He pleaded guilty to four counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251 and two counts of distributing a controlled substance to an individual with intent to commit a crime of violence in violation of 21 U.S.C,-§§ 841(a)(1) and (b)(7).' .He also pleaded no contest to another count of distributing a controlled substance to an individual with intent to a commit a crime of violence. As part of the plea agreement, the government agreed to dismiss the remaining counts in exchange for Mr. Hahn’s waiver of his right to appeal the sentence imposed, “except to the extent ... that the Court may depart upwards from the applicable sentencing guideline range ,as determined by the Court.”[2] The district court imposed concurrent sentences of 240 months for each of the counts to which Mr. Hahn pleaded guilty. On the count to which Mr. Hahn pleaded no contest, the court imposed a fifty-two-month sentence to run consecutively to the other terms. Thus, Mr. Hahn received a total sentence of 292 months’ incarceration in the sexual-exploitation case.
Moreover, the district court ordered that Mr. Hahn serve the 292-month sentence consecutively to the 480-month sentence previously imposed in the marijuana- and-firearms case, resulting in a total prison sentence of over sixty-four years. Over Mr. Hahn’s objections, the district court *1320 concluded that, under 18 U.S.C. § 924(c), it had “no alternative but to” impose the sentence consecutively.
On appeal, Mr. Hahn argues that the district court wrongly concluded that it lacked discretion to impose a concurrent, rather than a consecutive, sentence. He maintains that, had the district court correctly understood its authority to impose a concurrent sentence, it would have exercised that discretion to impose a sentence twenty-four years shorter than he received.
III. DISCUSSION
We face three issues on appeal. First, assuming that Mr. Hahn validly waived his right to appeal, do we have subject matter jurisdiction to hear this appeal? Second, if we have subject matter jurisdiction, what appellate waiver enforcement analysis should we undertake? Third, with the appropriate analysis at hand, how do we resolve this appeal? We address these issues in turn.
A. Subject Matter Jurisdiction
The parties agree, and we concur, that if Mr. Hahn’s appellate waiver is unenforceable, we would have subject matter jurisdiction. The parties, however, disagree about the effect an enforceable appellate waiver has on our subject matter jurisdiction. The government asserts that a valid waiver of appellate rights deprives this Court of both statutory and constitutional subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (describing subject matter jurisdiction as “the courts’ statutory or constitutional power to adjudicate the case”). Assuming for purposes of this jurisdictional discussion that the appellate waiver is enforceable, we disagree with the government and hold that we have subject matter jurisdiction to hear this appeal.

1. Statutory Subject Matter Jurisdiction

We read Mr. Hahn’s briefs to argue that the district court’s failure to consider a concurrent sentence constitutes a sentence imposed in violation of law. The government, therefore, contends that we lack statutory subject matter jurisdiction over this appeal because it could only arise under 18 U.S.C. § 3742(a)(1), which in the government’s view does not apply in this case because the sentence was not imposed in violation of law. See 18 U.S.C. § 3742(a)(1) (“A defendant may file a notice of appeal ... if the sentence ... was imposed in violation of law”). We disagree.
The government’s argument ignores the fact that the district court’s entry of a sentence constitutes a final order, thereby establishing subject matter jurisdiction under 28 U.S.C. § 1291. See 28 U.S.C. § 1291 (providing that courts of appeals have subject matter jurisdiction over final orders of district courts). It is beyond dispute that a conviction and imposition of a sentence constitute a final judgment for § 1291 purposes. Corey v. United States, 375 U.S. 169, 174, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963) (“Final judgment in a criminal case ... means sentence. The sentence is the judgment.”) (internal quotations omitted); United States v. Moskow, 588 F.2d 882, 889 (3d Cir.1978) (“A judgment of sentence is a final order whether the sentence is imposed after a jury verdict or after the entry of a guilty plea.”).
We regularly take subject matter jurisdiction pursuant to both § 3742(a) and § 1291 over cases in which a defendant, after entering into a plea agreement, seeks to challenge only the sentence imposed by the district court.[3] This practice is not *1321 unique to our Court.[4] We also note that “[p]rior to the passage of the Sentencing Reform Act of 1984 ... criminal appeals were taken pursuant to 28 U.S.C. § 1291[,]” United States v. Ready, 82 F.3d 551, 555 (2d Cir.1996) (internal citations and quotations omitted), and that the scope of § 1291 jurisdiction included an abuse of discretion review over sentencing errors.[5]
Although taking subject matter jurisdiction under both § 3742(a) and § 1291 appears to be accepted practice, we note that it could appear to transgress the canon of statutory construction that instructs “where a specific provision conflicts with a general one, the specific governs.” Edmond v. United States, 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). Strictly adhering to this canon would require courts to accept sentencing appeals exclusively under § 3742(a) because it is the more specific -jurisdictional statute. For the reasons discussed below,'we find another canon of statutory construction more applicable to this case.
The Supreme Court has
repeatedly stated ... that absent a clearly expressed congressional intention, repeals by implication are not favored. An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a substitute. Branch v. Smith, 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003) (citations and quotations omitted).[6]
*1322 To satisfy either of these tests for implicit repeal, “the intention of the legislature to repeal must be clear and manifest[.]” Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (internal quotations omitted). Moreover, silence in the legislative history is insufficient to support repeal by implication. Lynch v. Household Fin. Corp., 405 U.S. 538, 547-49, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (holding that predecessor act to 28 U.S.C. § 1331 did not repeal the predecessor of 28 U.S.C. § 1343(3) by implication). This rule against implied repeal is particularly persuasive when repeal would affect a bedrock jurisdictional statute such as § 1291.[7]
We find that no grounds exist to hold that § 3742 implicitly repealed the pre-1984 scope of § 1291. Here, the fact that § 3742 is limited to criminal law makes it obvious that it does not cover the whole subject of § 1291, which applies to both civil and criminal appeals. Further, legislative history does not support a conclusion that § 1291 and § 3742 are irreconcilably conflicted. See Radzanower, 426 U.S. at 154, 96 S.Ct. 1989. The legislative history of § 3742 does not discuss its impact on § 1291. See S.Rep. No. 98-225 at 149-55 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3332-38. Indeed, although silent on repeal, the legislative history does manifest Congress’s intent to expand appellate review over sentencing. Id. at 150-53; see also Lynch, 405 U.S. at 547-49, 92 S.Ct. 1113 (stating that legislative history supporting congressional intent to expand federal jurisdiction weighs against implied repeal of a previously enacted jurisdictional statute). Therefore, far from supporting implied repeal, the legislative history shows that Congress intended the opposite result. As such, we hold that the legislative history of § 3742 does not support the conclusion that § 3742 and § 1291 are irreconcilably conflicted.
Therefore, even assuming that the government’s § 3742(a)(1) analysis is correct, we find that we have statutory subject matter jurisdiction under § 1291 over sentencing appeals even when the defendant has waived his right to appeal in an enforceable plea agreement.

2. Article III Subject Matter Jurisdiction

In the alternative, the government argues that the entry of an enforceable appellate waiver renders this case moot, thus leaving us without the requisite case or controversy necessary for subject matter jurisdiction under Article III of the Federal Constitution. See U.S. Const, art. *1323 III, § 2, cl. 1; Whitmore v. Arkansas, 495 U.S. 149, 154-55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (“Article III, of course, gives the federal courts [subject matter] jurisdiction over only ‘cases and controversies’ ”); Iron Arrow Honor Soc’y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) (“Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.”). The government argues that the entry of a valid plea agreement, like civil settlements, moots a criminal appeal. See Tosco Corp. v. Hodel, 804 F.2d 590, 592 (10th Cir.1986) (per curiam) (“With limited exceptions, a settlement [in a civil case] involving all parties and all claims moots an action.”). We disagree.
We have offered several different locutions for determining when a case is moot. See, e.g., Hain v. Mullin, 327 F.3d 1177, 1180 (10th Cir.2003) (“A case is moot when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.”) (quotation omitted); Smith v. Plati, 258 F.3d 1167, 1179 (10th Cir.2001) (“An issue becomes moot when it becomes impossible for the court to grant ‘any effectual relief whatsoever’ on that issue to a prevailing party.”) (citations omitted). Further, the Supreme Court has held that “even the availability of a partial remedy is sufficient to prevent a case from being moot.” • Calderon v. Moore, 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) (internal quotations omitted). Indeed, in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court permitted defendants, who conditionally pleaded guilty, to challenge their convictions even after the completion of their sentences, because “the obvious fact of life [is] that most criminal convictions do in fact entail adverse collateral legal consequences. The mere possibility that this will be the case is enough to. preserve a criminal case from ending ignominiously.in the limbo'of mootness.” Id. at 55, 88 S.Ct. 1889 (quotations omitted). Regardless of the phrase employed, this case is not moot because we have the power to grant a legally cognizable remedy requested by a party- — namely, voiding the plea agreement.[8]
Our Tosco decision does not suggest a different result. In Tosco,' the named parties to the case settled after filing their appeal. Tosco, 804 F.2d at 591. Despite this settlement, potential intervenors sought to file motions with this Court. Id. We held that the settlement between the parties mooted the case, depriving us of subject matter jurisdiction to “entertain the motions of'the potential intervenors.” Id. In that case, neither named party challenged the validity of the settlement agreement; thus we could not have granted “any effectual relief whatsoever” to the parties without voiding the settlement itself, which neither party sought. In other words, the case was moot because neither party continued to seek a legally cognizable remedy that we had the power to grant. See Hain, 327 F.3d at 1180; Smith, 258 F.3d at 1179.
We do not face an analogous situation in this case. Instead of a third party seeking *1324 to prolong the life of a settled dispute, one of the parties is seeking to void the plea agreement — a legally cognizable remedy that we have the power to grant. Given this vital distinction, we find Bhattacharya v. Copple, 898 F.2d 766 (10th Cir.1990) (per curiam), persuasive.
In Bhattacharya, the parties entered into a settlement agreement that expressly permitted the district court to award attorneys fees up to $450,000. Id. at 767. After the district court awarded fees of approximately $180,000, plaintiffs appealed, arguing that the award was less than the $450,000 contemplated in the agreement. Id. at 768. On appeal, the defendants argued that, given the settlement, the Court lacked subject matter jurisdiction to hear the appeal because the amount of the award did not “create a controversy between the parties.” Id. We disagreed with the defendant’s argument, held that we had subject matter jurisdiction, and affirmed the award. We reached these conclusions in light of the applicable state statute that permitted the court in its discretion to approve or disapprove of attorneys’ fees. Id. at 768-69. Thus, we found that the allegations of abuse of discretion survived the settlement agreement. Id. at 769.
We face a similar situation here. Mr. Hahn and the government entered into a plea agreement that required the district judge, pursuant to federal statute and the U.S. Sentencing Guidelines Manual, to determine the length of Mr. Hahn’s sentence. Compare id. at 767 (parties entered into settlement whereby the district court, pursuant to Kansas statute, would determine the amount of attorneys’ fees). Here, the district court determined the length of Mr. Hahn’s sentence; and Mr. Hahn believes that this determination was made contrary to an implicit term of the plea agreement. Compare id. at 768 (plaintiff believed the award of attorneys’ fees to be contrary to the terms of the settlement agreement). As in Bhattacharya, the district court’s application of federal statutes and the Guidelines in sentencing survive,the plea agreement itself for purposes of the mootness analysis.[9] See id. at 769. We hold, then, that an appeal challenging the enforceability of an appellate waiver is not moot because we have the power to afford the legally cognizable relief — voiding the plea — requested by a party. See Hain, 327 F.3d at 1180; Smith, 258 F.3d at 1179.
Therefore, we hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement. To the extent that United States v. Rubio, 231 F.3d 709, 711 & n. 1 (10th Cir.2000), is inconsistent with this holding, we overrule it.
B. Appellate Waiver Enforcement Analysis
Finding that we have subject matter jurisdiction to entertain this appeal, we next consider how we should resolve appeals brought by defendants who have waived their appellate rights in a plea agreement. In fashioning our analysis, we are guided by four principles. First, every circuit that has considered enforcement of appellate waivers enforces at least some forms of appellate waivers.[10] Second, con *1325 tract principles govern plea agreements. See, e.g., United States v. Rockwell Int’l Corp., 124 F.3d 1194, 1199 (10th Cir.1997). Third, “a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court.” Elliott, 264 F.3d at 1173 (quotations omitted). Fourth, appellate waivers benefit the government by saving the costs of prosecuting appeals; and “[o]nly through the [efficient] dismissal of [an] appeal will the government receive the benefit of its' bargain.” Id. at 1174 (quotations omitted). With these principles at hand, we adopt the following analysis and a new intra-Court procedure.

1. Contract Analysis Tempered by Public Policy

We find persuasive the Eighth Circuit’s treatment of these principles and adopt, with slight variation, the three-prong analysis announced in United States v. Andis, 333 F.3d 886, 890-92 (8th Cir.2003) (en banc). This analysis calls for the court of appeals, in reviewing appeals brought after a defendant has entered into an appeal waiver, to determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein. See id.

a. Scope

The first prong of the analysis requires the court to determine if the disputed appeal falls within the scope of the appellate waiver. Id. at 890; see also United States v. Chavez-Salais, 337 F.3d 1170, 1173 (10th Cir.2003) (holding that a court will not enforce waivers of appellate rights beyond the scope of .the plea agreement); United States v. Atterberry, 144 F.3d 1299, 1300 (10th Cir.1998) (“This court will hold a defendant to the terms of a lawful plea agreement.”). In determining a waiver’s scope, we will “strictly construct ] [appeal waivers] and any ambiguities in these agreements will be read against the Government and in favor of a defendant’s appellate rights.” Andis, 333 F.3d at 890; see also Chavez-Salais, 337 F.3d at 1173 (“Like most waivers, a defendant’s waiver of his right to appeal ... is to be construed narrowly.”).

b. Knowing and'voluntary

The second prong of the analysis requires the court to ascertain whether the defendant knowingly and voluntarily waived his appellate rights. Andis, 333 F.3d at 890-91; see also Elliott, 264 F.3d at 1173. When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two-factors. First, we examine whether the- language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Elliott, 264 F.3d at 1174 n. 1 (“Indeed, the plea agreement, which he signed, stated that [the defendant] ‘knowingly and expressly waive[d] the right’ to appeal”). Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy. Andis, 333 F.3d at 891; Chavez-Salais, 337 F.3d at 1173 (“The second way'in which the content of a defendant’s waiver of appeal rights can be made known to him is through the colloquy with the - court required by Federal Rule of Criminal Procedure'11.”).
*1326 Mr. Hahn and amicus curiae, the National Association of Criminal Defense Lawyers (“NACDL”), urge that, as a matter of law, a waiver of appellate rights entered into prior to sentencing cannot be knowing and voluntary.[11] They assert that in such cases a defendant can never knowingly and voluntarily waive his appellate rights because he cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence. In making their argument, Mr. Hahn and the NACDL rely mainly on United States v. Melancon, 972 F.2d 566, 571 (5th Cir.1992) (Parker, J., concurring) (“I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a ‘waiver’ is inherently uninformed and unintelligent.”); United States v. Han, 181 F.Supp.2d 1039, 1042 (N.D.Cal.2002) (same); United States v. Raynor, 989 F.Supp. 43, 44 (D.D.C.1997) (same). This argument does not persuade us.
Instead, we find persuasive the analyses of two circuits that have addressed and rejected the same argument presented by Mr. Hahn and the NACDL. See United States v. Teeter, 257 F.3d 14, 21-23 (1st Cir.2001); United States v. Khattak, 273 F.3d 557, 560-62 (3d Cir.2001). In asserting that an appeal waiver can never be knowing and voluntary, Mr. Hahn and the NACDL improperly focus on the prospective result of the sentencing proceeding rather than the right relinquished. Illustrating the fault with this approach, the court in Teeter noted that the waiver of the right to appeal is no more prospective than the waiver of the right to trial by jury, which may be permissibly waived. Id. at 21 (“Although many ... waivers [for criminal defendants] pertain to future events—a waiver of the right to trial by jury is a good example—their prospective nature has never been thought to place them off limits or to render the defendant’s act ‘unknowing.’ ”). It is true that when a defendant waives his right to appeal, he does not know with specificity what claims of error, if any, he is foregoing. Nevertheless, as the Teeter court reasoned, this fact has never rendered a defendant’s guilty plea unknowing or involuntary. Id.; Khattak, 273 F.3d at 561 (“Waivers of the legal consequences of unknown future events are commonplace .... [and enforceable.]”).[12]
*1327 The Supreme Court’s recent decision in United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), reinforces our conclusion. In Ruiz, the Court addressed the validity of a, plea agreement in which the defendant waived the right to receive from the prosecutor exculpatory impeachment material and information relating to affirmative defenses that the defendant might raise at trial. Id. at 628, 633, 122 S.Ct. 2450. In upholding such a waiver, the Court rejected any notion that a defendant must know with specificity the result he forfeits before his waiver is valid:
[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances — even though the defendant may not know the specific detailed consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawr yer the State might otherwise provide. Id. at 629-30, 122 S.Ct. 2450.
Therefore, we reject the notion that, as a matter of law, all presentencing waivers of appellate rights are unknowing and involuntary.
c. Miscarriage of Justice
The third prong of our enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice. Andis, 333 F.3d at 891; Khaitak, 273 F.3d at 562-63; Teeter, 257 F.3d at 25. We find that, like the Eighth Circuit, “we have not previously defined this exception, [but] we have described many of its components.” Andis, 333 F.3d at 891.
Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Elliott, 264 F.3d at 1173 (citing United States v. Cockerham, 237 F.3d. 1179, 1182 (10th Cir.2001)).[13]
We hold that enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated in Elliott. See id. We further hold that to satisfy the fourth Elliott factor — where the waiver is otherwise unlawful — “the error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings[,]” as that test was employed in United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

*1328
2. Intrar-Cinuit Procedure

As noted above, “[o]nly through the [efficient] dismissal of [an] appeal will the government receive the benefit of its [appellate waiver] bargain.” Elliott, 264 F.3d at 1174 (quotation omitted). Invariably, in cases such as this one, the government files a motion to dismiss the appeal after the defendant files his notice of appeal. Our practice has been to defer ruling on the government’s motion, refer the motion to the merits panel, and order the parties to brief the underlying merits of the case. The government argues that this practice, in effect, robs it of the benefit of its bargain. We agree.
To preserve the benefit of the government’s bargain and employ our appellate waiver enforcement analysis, henceforth, when a defendant who has waived his appellate rights in a plea agreement files a notice of appeal and the government wishes to enforce this waiver, the government will file a “Motion for Enforcement of the Plea Agreement.” This motion will address the three-prong enforcement analysis provided above, but not the underlying merits of the defendant’s appeal. The defendant will then have the opportunity to respond. The Clerk of the Court will forward the government’s motion, and any responding briefs, to the panel. The parties will not be directed to brief the underlying merits of the defendant’s appeal.
If the panel finds that the plea agreement is enforceable, it will summarily dismiss the appeal. If the panel finds the plea agreement unenforceable, it will issue a ruling consistent with this finding. Currently, 10th Cir. R. 27.2(A)(1) allows only three types of dispositive motions. The approach outlined above requires the addition of a fourth type of motion. We will amend the rules accordingly.
C. Application To Mr. Hahn’s Appeal
We now apply the above-outlined three-prong enforcement analysis to Mr. Hahn’s appeal, enforce Mr. Hahn’s waiver, and dismiss.

1. Scope of Mr. Hahn’s Waiver

Mr. Hahn’s current appeal falls within the scope of his waiver of appellate rights. Although we narrowly construe the scope of Mr. Hahn’s waiver of appellate rights, Chavez-Salais, 337 F.3d at 1173, “[t]his court will hold a defendant to the terms of a lawful plea agreement!,]” Atterberry, 144 F.3d 1299,1300 (10th Cir.1998). Mr. Hahn signed a broad waiver of appellate rights. It states that he “knowingly waive[d] the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in the which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever.” Mr. Hahn’s argument — that the district court failed to recognize its discretion to impose the sentence in this case concurrently with the sentence in the marijuana- and-firearms case — unambiguously falls within the scope of this waiver. Moreover, nothing in the record indicates that he retained the right to appeal this sentencing question.[14] We conclude, therefore, that this appeal falls within the scope of Mr. Hahn’s waiver.

2. Knowing and Voluntariness of Mr. Hahn’s Waiver

We only enforce appeal waivers that defendants enter into knowingly and volun *1329 tarily. Elliott, 264 F.3d at 1173. Here, absent the argument that all presentence waivers of appellate rights are not knowing and voluntary, which we rejected above, Mr. Hahn fails to provide support for the notion that he did not knowingly and voluntarily enter into his plea agreement. Mr. Hahn bears the burden on this score. United States v. Edgar, 348 F.3d 867, 872-73 (10th Cir.2003) (defendant “has the burden to present evidence from the record establishing that he did not understand the waiver.”). Therefore, we hold that Mr. Hahn entered into this agreement knowingly and voluntarily.

3. Miscarriage of Justice and Mr. Hahn’s Waiver

We will enforce Mr. Hahn’s appellate waiver unless we find that the enforcement of the waiver would constitute a miscarriage of justice. To constitute a miscarriage of justice, enforcement of Mr. Hahn’s waiver must result in one of the four scenarios enumerated in Elliott, 264 F.3d at 1173. Moreover, to meet the fourth Elliott factor (i.e., enforcement of the waiver is otherwise unlawful) the alleged error must satisfy the fourth prong of the Olano plain error test. See Olano, 507 U.S. at 732, 113 S.Ct. 1770 (“[T]he error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings^]”) (internal citations omitted).
Here, the district court did not rely upon an impermissible factor such as race in sentencing Mr. Hahn. See Elliott, 264 F.3d at 1173. Mr. Hahn does not allege ineffective assistance of counsel in connection with the negotiation of the appellate waiver. See id. Mr. Hahn’s sentence does not exceed the statutory maximum. See id. Finally, even'if the district court’s conclusion regarding its lack of sentencing discretion was in error, a' determination that we need not reach here, this error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. See Olano, 507 U.S. at 732, 113 S.Ct. 1770; Elliott, 264 F.3d at 1173. Indeed, the district court’s consecutive sentence is specifically allowed by 18 U.S.C. §§ 924(c) and 3584. Subjecting Mr. Hahn to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity, or public reputation of judicial proceedings. As such, we find that enforcing Mr. Hahn’s waiver of appellate rights would not constitute a miscarriage of justice.
Because we are satisfied that the current appeal is within the scope of Mr. Hahn’s waiver, that the waiver was knowing and voluntary, and that enforcing the waiver would not result in a miscarriage of justice, we enforce Mr. Hahn’s waiver and dismiss this appeal.[15]
IV. CONCLUSION
This Court retains subject matter jurisdiction over appeals filed after a criminal defendant signs an enforceable waiver of appellate rights. Although we retain subject matter jurisdiction, upon motion by the government, we will conduct the three-prong enforcement analysis discussed above. If we conclude that the waiver is unenforceable, we will issue a ruling consistent with this finding. If we conclude that the waiver agreement is enforceable, we will dismiss. Applying these principles *1330 here, we hold Mr. Hahn’s waiver of appellate rights enforceable and DISMISS.

. We define the narrow parameters of miscarriages of justice below.

. The appeal waiver in, the plea agreement executed by Mr. Hahn provides as follows:
12. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.
a. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.
b. Acknowledging that, the defendant knowingly waives the' right to appeal any sentence within the guideline range applicable to the statutes of conviction as determined by the Court after resolution of any objections by either party to the presen-tence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the Court in resolving any contested sentencing factor. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the Court may depart upwards from the applicable sentencing guideline range as determined by the Court.

. See, e.g., United States v. Hurlich, 348 F.3d 1219, 1220 (10th Cir.2003) (exercising jurisdiction under both § 1291 and § 3742(a) *1321 when the defendant challenged only his sentence); United States v. Castro-Rocha, 323 F.3d 846, 847 (10th Cir.2003) (same); United States v. Vasquez-Flores, 265 F.3d 1122, 1123 (10th Cir.2001) (same).

. See, e.g., United States v. Vasquez, 352 F.3d 1067, 1070 (6th Cir.2003) ("This court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2) because Vasquez is appealing the district court's final sentence on the ground that it was imposed through an incorrect application of the guidelines.”); see also United States v. Warren, 338 F.3d 258, 262 (3d Cir.2003) (same); United States v. Rhodes, 330 F.3d 949, 952 (7th Cir.2003) (same); United States v. Berberich, 254 F.3d 721, 722 (8th Cir.2001) (same); United States v. Hernandez-Valdovinos, 352 F.3d 1243, 1245 (9th Cir.2003) (same).
The Eleventh Circuit exercises jurisdiction over such cases solely under § 1291 because it does not read § 3742 to regulate subject matter jurisdiction. United States v. Fossett, 881 F.2d 976, 978-80 (11th Cir.1989); see also Arizona v. Manypenny, 451 U.S. 232, 244-49, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (distinguishing between an appellate court's subject matter jurisdiction and a party's right to file an appeal). This is a minority position, however. See United States v. Graham, 72 F.3d 352, 361 n. 1 (3d Cir.1995) (Nygaard, J., concurring) (listing cases).
The Supreme Court has yet to rule on whether § 3742 is jurisdictional, but recent dicta indicates that it may be. See United States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).

. See, e.g., Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) ("[0]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.”); see also Koon v. United States, 518 U.S. 81, 96-100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (stating that prior to the Sentencing Reform Act of 1984, courts of appeals reviewed sentencing for abuse of discretion); Ian Weinstein, The Discontinuous Tradition of Sentencing Discretion: Koon’s Failure to Recognize the Reshaping of Judicial Discretion Under the Guidelines, 79 B.U. L.Rev. 493, 499 (1999) ("In Iioon, the Supreme Court followed longstanding practice in using 'discretion’ to describe ... the unre-viewable, and essentially standardless, pre-[Sentencing Reform Act] exercise of sentencing power[.]”).

. We note initially that § 3742(a) does not explicitly limit § 1291. Although § 3742(a)(1) manifests the congressional intent to codify pre-1984 jurisdiction over sentencing appeals — see United States v. Colon, 884 F.2d 1550, 1553 (2d Cir.1989); S.Rep. *1322 No. 98-225 al 149-55 (1983), reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3332-38 — there is simply nothing in the text of § 3742 clearly expressing a congressional intent to limit the courts of appeals' § 1291 subject matter jurisdiction over sentencing appeals. Moreover, we are further persuaded by the fact that Congress has not employed in § 3472(a) the blunt language it has used elsewhere to limit jurisdiction. See, e.g., 26 U.S.C. § 7429(f) ("Any determination made by a court under this section shall be final and conclusive and shall not be reviewed by any other court.”); 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding .... No action against the United States [or other specified persons] ... shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.'').

. Congress created intermediate courts of appeals in 1891. See Judiciary Act of 1891, 26 Stat. 826. The very act that created the courts of appeals conferred on them the power to review final judgments in almost all civil and criminal cases. 26 Stat. 828, § 6. Reco-dified and technically amended, § 6 of the 1891 Act exists essentially unchanged today as 28 U.S.C. § 1291. See Midland Asphalt Corp. v. United States, 489 U.S. 794, 798, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (tracing the lineage of § 1291 as it relates to Supreme Court jurisdiction to the Judiciary Act of 1789, 1 Stat. 73).

. To be clear, in the context of subject matter jurisdiction, our ability to grant relief speaks •to our power to grant relief, not whether we should exercise that power. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (describing subject matter jurisdiction as “the courts’ statutory or constitutional power to adjudicate the case”); 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3522, at 78-79 (2d ed. 1984) ("The jurisdiction of the federal courts is dependent on the subject matter of the action or the status of the parties to it; it is not dependent on the merits of the case. Thus a court may have subject matter jurisdiction over a case even though the action is one to which there is no merit.”).

. We do not hold that erroneous application of federal statutes or the Sentencing Guidelines provide grounds for finding a waiver agreement unenforceable, only that we have jurisdiction to entertain such cases.

. See generally United States v. Teeter, 257 F.3d 14, 21-27 (1st Cir.2001); United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001); United States v. Khattak, 273 F.3d 557, 559-63 (3d Cir.2001); United States v. Brown, 232 F.3d 399, 402-06 (4th Cir.2000); United *1325 States v. Melancon, 972 F.2d 566, 567 (5th Cir.1992); United States v. Fleming, 239 F.3d 761, 764 (6th Cir.2001); United States v. Jemison, 237 F.3d 911, 916-18 (7th Cir.2001); United States v. Andis, 333 F.3d 886, 889 (8th Cir.2003) (en banc); United States v. Nguyen, 235 F.3d 1179, 1182-84 (9th Cir.2000); United States v. Howie, 166 F.3d 1166, 1168-69 (11th Cir.1999).

. In his panel reply brief, Mr. Hahn, specifically indicated that he was not attempting to invalidate the plea agreement on the ground that it was unknowing or involuntary. Applt's Reply Br. at 1-2. In his supplemental en banc brief, however, Mr. Hahn changed tack. He noted generally that some courts and commentators have questioned whether a defendant can ever knowingly waive an appeal of unforeseen error, and then specifically asks this court to conclude that "the matter appealed is beyond the scope of the waiver, and that the waiver was not knowingly and intelligently entered into, and ... grant Mr. Hahn the relief requested, both on the waiver and on the substantive grounds." Applt's Supp. Br. at 17, 25. We address the argument advanced in Mr. Hahn's supplemental brief.

. Other circuits have highlighted the logical failings of focusing on the result of a proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is unknowing or involuntary. See, e.g., United States v. Nguyen, 235 F.3d 1179, 1184 (9th Cir.2000) ("Under Nguyen’s view, a waiver of appellate rights would be essentially meaningless; the waiver would be valid if the claims were meritless, but invalid if the claims were meritorious. The whole point of a waiver, however, is the relinquishment of claims regardless of their merit."); United States v. Howie, 166 F.3d 1166, 1169 (11th Cir.1999) ("A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it in- *1327 eluded only those appeals that border on the frivolous...."); United States v. Wenger, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments.... To say that a waiver of appeal is effective if and only if the defendant lacks grounds for appeal is to say that waivers will not be honored.”).

. Generally, we only consider ineffective assistance of counsel claims on collateral review. See, e.g., United States v. Edgar, 348 F.3d 867, 869 (10th Cir.2003) ("Although it is well established that we will not enforce a waiver that is the product of ineffective assistance of counsel .... [w]ith rare exception, a defendant must raise ineffective assistance of counsel claims in a collateral proceeding, not on direct appeal.”) (citation omitted). Our holding today does not disturb this longstanding rule.

. Mr. Hahn does note that at the sentencing hearing his counsel indicated that he believed Mr. Hahn was entitled to appeal this question despite the appeal waiver. Nevertheless, these statements made after the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver.

. In this case, the government moved to dismiss Mr. Hahn’s appeal for lack of subject matter jurisdiction. We rejected this argument. Nevertheless, given that Mr. Hahn's waiver of appellate rights is enforceable, which precludes us from reaching the merits of this appeal, "this court has inherent authority,. wholly aside from any statutory warrant, to dismiss [this] appeal ... as frivolous [because] the appeal ... presents no arguably meritorious issue for our consideration." Pil-lay v. Immigration & Naturalization Serv., 45 F.3d 14, 17 (2d Cir.1995) (per curiam).