FILED
United States Court of Appeals
Tenth Circuit

June 15, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RONALD LASLEY,

Defendant-Appellant.

No. 09-3081
(D.C. No. 2:07-CR-20067-CM-2)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

Before us is the government's motion to enforce Ronald Lasley's

post-conviction agreement to waive his right to appeal his conviction and

sentence. We grant the motion.

In October 2007, Mr. Lasley was convicted on two drug counts:

(1) conspiracy to distribute more than 5 kilograms of cocaine and more than

50 grams of cocaine base; and (2) attempting to possess, with intent to distribute,

---

[*] This panel has determined unanimously that oral argument would not
materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral
argument. This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

5 kilograms or more of a mixture or substance containing cocaine.  In March 2008, Mr. Lasley entered into a post-conviction agreement with the government in which he agreed to waive his right to appeal or collaterally attack any matter in connection with prosecution, conviction, or the components of the sentence to be imposed.[1]  Mot. to Enforce, at 2.  More specifically, Mr. Lasley waived the right to appeal any sentence imposed that was within the sentencing guideline range determined by the court.  *Id.*

Mr. Lasley was sentenced in March 2009.  The district court determined that Mr. Lasley's sentencing guideline range was 235 to 293 months, and sentenced him to 235 months' imprisonment, at the low end of the guideline range.  Despite the waiver of his appeal rights, Mr. Lasley appealed, and the government moves to enforce the appeal waiver under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

Under *Hahn*, in determining whether to enforce an appeal waiver, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his

---

[1]    The post-conviction agreement is sealed, *see* Docket Entry No. 61, entered March 28, 2008 in *United States v. Lasley*, No. 2:07-20067-CM-2 (D. Kan.), and neither party has provided this court with a copy of the sealed agreement.  Neither party disputes the government's description of the appeal waiver contained in that post-conviction agreement, however; thus we assume the accuracy of the government's recitation of the agreement's appeal waiver provision.

appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." 359 F.3d at 1325.

As noted, the plain language of the post-conviction agreement is quite clear that Mr. Lasley waived his right to appeal his sentence; indeed, Mr. Lasley concedes that he knowingly and voluntarily waived his appellate rights and that his proposed appeal falls within the scope of the appeal waiver. Mr. Lasley contends, however, that a miscarriage of justice would occur if the appeal waiver is enforced. The miscarriage-of-justice factor requires the defendant to show (a) his sentence relied on an impermissible factor such as race; (b) ineffective assistance of counsel in connection with the negotiation of the appeal waiver rendered the waiver invalid; (c) his sentence exceeded the statutory maximum; or (d) his appeal waiver is otherwise unlawful and the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 1327 (quotation omitted).

Mr. Lasley asserts that the first and fourth factors are met because he is an African-American who was convicted of a "crack" cocaine offense. He argues that race was a factor in his sentencing, citing to April 2009, testimony of Assistant Attorney General Lanny A. Breuer, before a United States Senate Committee, that the 100-to-1 quantity ratio applied in sentencing crack cocaine offenses compared to powder cocaine offenses has resulted in racial disparities. Reply, Attach. 1, *Senate Statement*, at 9. Mr. Breuer testified that 82 percent of

individuals convicted of federal crack cocaine offenses are African-Americans, while only 9 percent are white. *Id*. He further testified that the Department of Justice endorses the complete elimination of the sentencing disparity between crack cocaine and powder cocaine. *Id*. at 10.

As an "interim measure to alleviate some of [the] problems" with the 100-to-1 sentencing ratio between crack and powder cocaine offenses, the United States Sentencing Commission amended the Sentencing Guidelines in 2007, by providing a 2-level reduction in base offense levels for crack-related offenses. *Notice of Submission to Congress of Amendments to the Sentencing Guidelines Effective November 1, 2007*, 72 Fed. Reg. 28558, 28571-28573 (May 21, 2007); *see also* U.S.S.G. § 2D1.1(c) (Nov. 2008) (incorporating amended base offense levels); U.S.S.G. App. C, Amend. 706 (2007). Mr. Lasley was sentenced under this amendment.

We recognize the serious concerns underlying Mr. Lasley's miscarriage-of-justice argument, and we do not contest that the implementation of the 100-to-1 quantity ratio more greatly impacts African-Americans across the justice system as a whole. Nonetheless, we cannot conclude that the racial disparities resulting from the 100-to-1 quantity ratio satisfy *Hahn*'s requirement that the sentence "relied on" an impermissible factor, such as race. 359 F.3d at 1327. The 100-to-1 quantity ratio was imposed for a number of different reasons, none of them race. *See U.S. Sentencing Comm'n, Report to the Congress:*

*Cocaine and Federal Sentencing Policy* 90 (May 2002) (listing reasons underlying the 1986 enactment of the 100-to-1 quantity ratio) (available at http://www.ussc.gov/r_congress/ 02crack/2002crackrpt.pdf).  Mr. Lasley's sentence did not "rely on" his race.  *Cf. United States v. Williamson*, 53 F.3d 1500, 1530 (10th Cir. 1995) ("We have repeatedly rejected each of the arguments necessary to find § 2D1.1 violative of equal protection.").  The levels are applied regardless of an offender's race, and Mr. Lasley has presented nothing to show that an otherwise similarly-situated offender of a different race would have received a different sentence.

Mr. Lasley asserts that he could not possibly have anticipated that, after he was sentenced, the Department of Justice would support the complete elimination of the sentencing disparity between crack and powder cocaine.  The problems surrounding the 100-to-1 quantity ratio, and the Sentencing Commission's efforts to lower the ratio, were well-known when Mr. Lasley entered his post-conviction appeal waiver.  *See Kimbrough v. United States*, 552 U.S. 85, ___, 128 S.Ct. 558, 568-569  (2007) (discussing the Sentencing Commission's criticisms of the sentencing disparity between crack and powder cocaine offenses and the Commission's 2007 amendments to the Guidelines on crack offenses.).  As noted, Mr. Lasley was sentenced in accordance with the 2007 amendments.  To the extent that Mr. Lasley is arguing that it would be a miscarriage of justice to hold him to his agreement simply because the Department of Justice now supports a

change in the sentencing guidelines, we have held that appellate waivers are enforceable even though a defendant did not know exactly how the waiver might apply. *See Hahn*, 359 F.3d at 1326. We conclude that it would not be a miscarriage of justice to enforce Mr. Lasley's appeal waiver.

Accordingly, the motion to enforce plea agreement is GRANTED and the appeal is DISMISSED.

ENTERED FOR THE COURT
PER CURIAM