**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LOZARO LEON BETANCOURT,

    Defendant - Appellant.

No. 19-6038
(D.C. No. 5:17-CR-00295-F-5)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

This matter is before the court on the government's motion to enforce the

appeal waiver in Lozaro Leon Betancourt's plea agreement. Exercising jurisdiction

under 28 U.S.C. § 1291, we grant the motion and dismiss the appeal.

**BACKGROUND**

Betancourt pleaded guilty to conspiracy to commit access device fraud in

violation of 18 U.S.C. § 1029(b)(2). The written plea agreement provided a detailed

advisement about the possible sentences. As pertinent here, it explained that the

maximum statutory sentence was five years and that Betancourt had agreed that for

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

purposes of calculating the applicable guidelines range, the total of actual and intended losses was between $250,000 and $550,000. The plea agreement also explained that Betancourt had agreed to waive his "right to appeal his sentence," including "the manner in which the sentence is determined," and provided that the only exception to the appeal waiver was that he retained his right to appeal the substantive reasonableness of an above-guidelines sentence. Mot. to Enforce, Attach. 1 at 8. By signing the written plea agreement, Betancourt acknowledged that he was entering his plea knowingly and voluntarily and that he understood its consequences, including the stipulated loss range, possible sentences, and appeal waiver.

At the change of plea hearing, Betancourt assured the court that he had read and discussed the plea agreement with counsel before signing it and that he understood its terms. The court reminded him of the possible sentences and the court's discretion to determine both the applicable guidelines range and the ultimate sentence imposed. The court also reminded Betancourt about the broad scope of the appeal waiver and confirmed that he understood that he was waiving his right to appeal "even though [he did] not yet know what [his] sentence . . . will be." *Id.*, Attach. 2 at 11. At every step of the advisement, Betancourt indicated that he understood, and he did not ask questions or seek clarification when given the opportunity to do so. Based on Betancourt's responses to the court's questions and its observations of his demeanor during the change of plea hearing, the court accepted his plea as having been voluntarily, knowingly, and intelligently entered.

2

At the subsequent sentencing hearing, the court and counsel had an extensive colloquy about Betancourt's objections to the loss amount. Specifically, he argued that his sentence should be based on the actual loss amount, which represented the loss to financial institutions and individuals whose credit cards were compromised, instead of on the intended loss amount, which included the value of numerous counterfeit credit cards, gifts cards, and other instruments he possessed in furtherance of the fraud scheme. He maintained that the court should give little weight to the intended loss amount both because it was overstated and because it included the value of gift cards despite the lack of circuit precedent holding that gift cards are access devices for purposes of the access device fraud statute. But the court ultimately overruled those objections, noting that the parties had stipulated to a total loss amount of $259,870.03. Based in part on that loss amount, the court adopted a guidelines range of 30 to 37 months and, after considering the parties' arguments for upward and downward variations, sentenced Betancourt to 37 months in prison—the maximum sentence in the applicable guidelines range.

Despite the fact that his sentence does not fall within the only exception that would permit an appeal (an above-guidelines sentence), Betancourt filed an appeal claiming the sentence is substantively unreasonable and excessive in light of his lack of criminal history and the court's use of "an artificially inflated" intended loss amount. Aplt. Docketing Statement at 4.

## DISCUSSION

In ruling on a motion to enforce, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Betancourt concedes that he knowingly and voluntarily waived his right to appeal and that his appeal falls within the scope of the waiver. He maintains, however, that enforcing the appeal waiver would result in a miscarriage of justice. We disagree.

A miscarriage of justice occurs where (1) "the district court relied on an impermissible factor such as race"; (2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid"; (3) "the sentence exceeds the statutory maximum"; or (4) "the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (internal quotation marks and citations omitted). To show that an appeal waiver is "otherwise unlawful," the defendant must prove that the alleged error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 1329. "The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice." *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Here, Betancourt claims his appeal waiver is "otherwise unlawful" and that "[j]ustice and notions of fundamental fairness" require that he be permitted to appeal the substantive reasonableness of his sentence because the court's use of the intended

4

loss amount resulted in an excessive sentence that does not fulfill the purposes of punishment set forth in 18 U.S.C. § 3553(a). Resp. to Mot. to Enforce at 6. But his argument challenges the propriety of the sentence, not the legality of his appeal waiver. Because the "otherwise unlawful" exception is focused on the fairness of the proceedings, not the result of the proceedings, a defendant may not rely on it to avoid enforcement of an appeal waiver based on alleged errors in the calculation of his sentence. *United States v. Smith*, 500 F.3d 1206, 1212-13 (10th Cir. 2007).

## CONCLUSION

Accordingly, we grant the government's motion to enforce the appeal waiver and dismiss the appeal.

Entered for the Court
Per Curiam