**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GEORGE WILLIAM BOWEN, III,
a/k/a William St. Regis De La Cruz,
a/k/a William Brown, a/k/a William Harris,
a/k/a William Harries,

    Defendant - Appellant.

No. 19-1462
(D.C. No. 1:18-CR-00254-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

George William Bowen, III, pleaded guilty pursuant to a written plea

agreement containing a waiver of his right to appeal. This matter is before the court

on the government's motion to enforce Bowen's appeal waiver. We grant the motion

to enforce and dismiss the appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Bowen pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. He admitted that over a two-year period he had devised and executed, using interstate wire communications, a scheme to obtain investments in fraudulent travel clubs and a fraudulent real estate venture in Mexico, where he was living as a fugitive from a theft charge in Colorado.

The day before Bowen's sentencing, the district court sentenced his co-defendant, Mauricio Beltran-Lopez, to 30 months' imprisonment. In addition to granting Beltran-Lopez a two-level reduction for his minor role in the offense and a three-level reduction for his acceptance of responsibility, the district court granted the government's motion for a variant sentence based upon Beltran-Lopez's cooperation. And the court ultimately imposed a prison sentence that was seven months shorter than the government's recommendation. Bowen contends that the district court's stated intent was to impose a sentence for Beltran-Lopez that was fair in comparison to the sentence that Bowen would receive if the court granted the government's request for an additional two-level reduction in Bowen's case.[1]

At Bowen's sentencing the next day, the district court granted the government's motion for a three-level reduction in Bowen's offense level based upon

---

[1] Bowen asserts that, as of Beltran-Lopez's sentencing, the district court intended to grant Bowen this two-level reduction, but then changed course the following day at Bowen's sentencing. The court's statements during Beltran-Lopez's sentencing indicate, however, that it had not yet made a decision on the government's substantial-assistance motion in Bowen's case.

his acceptance of responsibility.  That decrease resulted in a total offense level of 22 and an advisory Guidelines sentencing range of 63 to 78 months' imprisonment.  The court denied the government's additional motions requesting that it (1) depart downward two offense levels based upon Bowen's substantial assistance, and (2) sentence Bowen to 51 months' imprisonment, at the low end of the Guidelines range resulting from that departure.

The government had argued that a two-level departure was warranted because (1) Bowen had provided information that caused Beltran-Lopez to immediately plead guilty, thereby avoiding a trial "which would have been very . . . painful and difficult for the dozens of victims," Mot. to Enforce, Attach. 3 (Sent. Tr.) at 36; (2) fraud is difficult to prove, juries are unpredictable, and "things can go wrong in trials," *id.*; and (3) Bowen had provided information about another individual in Mexico who was creating false documentation.

The district court was not persuaded.  It stated that, in its experience, white-collar fraud cases are easier to prove because "you have the documentation." *Id.* at 37.  The court also believed that a trial would have been "more therapeutic" for the victims.  *Id.* at 36.  And it was skeptical as to what Bowen's information had accomplished, characterizing his statements regarding Beltran-Lopez as "very self-serving." *Id.* at 38.  Regarding the individual who was creating false documents, the court said, "[W]e know that happens everywhere." *Id.*  The district court stated further that "usually if I am giving a downward departure request like this, there has been a conviction of somebody else.  We have none of that here.  I just don't really

3

see the basis for a 2-level downward departure." *Id.* The court also commented on a

disparity it had observed in the sentencing guidelines:

> [A]s you all know, I consider the guidelines to be kind of biased; huge
> sentences for young black and Hispanic men who sell drugs because they
> are addicted, and slaps on the wrist for people like Mr. Bowen and
> Mr. Madoff, who end up ruining the lives of many, many people out of
> greed, just total greed.

*Id.*[2] Finally, in response to the government's observation that its requested departure

for Bowen was less than in many drug cases, the court stated, "And that is when we

have a lot of convictions that come down as a result of the information that is being

given." *Id.* at 39. The court sentenced Bowen to 78 months' imprisonment, at the

top of the applicable guidelines range.

### MOTION TO ENFORCE APPEAL WAIVER

Bowen filed a notice of appeal. He intends to appeal his sentence. But

pursuant to his plea agreement, Bowen

> knowingly and voluntarily waive[d] the right to appeal any matter in
> connection with this prosecution, conviction, or sentence unless it meets
> one of the following criteria: (1) the sentence exceeds the maximum penalty
> provided in the statute of conviction; (2) the sentence exceeds the advisory
> Guideline range that applies to a total offense level of **22**; or (3) the
> government appeals the sentence imposed.

Mot. to Enforce, Attach. 1 at 2.

The government moved to enforce Bowen's appeal waiver under *United States*

*v. Hahn*, 359 F.3d 1315 (10th Cir.2004) (en banc) (per curiam). In evaluating a

motion to enforce a waiver, we consider "(1) whether the disputed appeal falls within

---

[2] One of the victims who spoke at Bowen's sentencing had compared Bowen
to Bernie Madoff.

the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. In his response to the government's motion, Bowen does not contend that his appeal issue falls outside of the scope of the appeal waiver, or that he did not knowingly and voluntarily waive his appellate rights. He argues only that enforcing his waiver will result in a miscarriage of justice, thereby invoking the third factor in the *Hahn* analysis.

Regarding the third factor, we have stated:

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.

*Id.* at 1327 (internal quotation marks omitted). Pointing to the district court's reference to "young black and Hispanic men who sell drugs," Sent. Tr. at 38, versus defendants like Bowen and Bernie Madoff, who are older and white, Bowen argues that the district court relied on impermissible factors—his race and his age—in imposing an imprisonment term that is two-and-one-half times longer than his co-defendant's sentence.

**STANDARD OF REVIEW**

Bowen did not preserve this issue in the district court. After the court made the remarks on which he bases his claim and announced his sentence, it asked, "Is there anything further?" *Id.* at 66. His counsel did not complain of any racial or age-related bias by the district court at that time or at any other point in his

5

sentencing hearing.  Because Bowen did not challenge in the district court that court's alleged reliance on an impermissible factor in imposing his sentence, our review is for plain error only.  *See United States v. Johnson*, 756 F.3d 1218, 1220 (10th Cir. 2014).  On plain-error review Bowen "must establish (1) that the district court committed error, (2) that the error was plain, and (3) that the error affected his substantial rights."  *Id.* at 1222 (alteration and internal quotation marks omitted).  "If [he] satisfies all three of these factors, [he] must then show that an exercise of the court's discretion is appropriate because the error affects the integrity, fairness, or public reputation of judicial proceedings."  *Id*. (internal quotation marks omitted).

## ANALYSIS

Bowen has not satisfied the heavy plain-error burden.  His miscarriage-of-justice argument rests on an inference based upon the district court's reference to the guidelines' treatment of "young black and Hispanic men" who commit drug offenses, versus defendants like Bernie Madoff and Bowen, who perpetrate fraudulent schemes.  Bowen contends the court's comment shows that it denied the government's substantial-assistance motion in his case and imposed a much lower sentence on Beltran-Lopez, who is 32 and Hispanic, because Bowen is older and white.  He asserts that the court's other stated reasons for the sentencing difference between him and Beltran-Lopez are entirely pretextual.  At the very least, Bowen argues that the court's unnecessary reference to racial bias in the guidelines demonstrates that it considered the impermissible factor of race in sentencing Bowen.

6

Bowen has not shown an error that is plain. The transcript of Beltran-Lopez's sentencing hearing provides a more complete picture of the district court's reasoning for giving him a lighter sentence as compared to Bowen. As at Bowen's sentencing, the court addressed during Beltran-Lopez's sentencing its view of the guidelines' treatment of white-collar crimes as compared to drug offenses:

> [I]n these type of fraud cases, I normally either sentence at the top of the range or I go above the range, because I think that unfortunately our sentencing guidelines are quite lax when it comes to punishing people who commit white-collar crime, and that is a bias that our system seems to have.
>
> You can go out and sell some drugs because you are a drug addict, and you are going to get the book thrown at you, but you can go out and defraud people of millions of dollars and destroy their entire lives, and we essentially give them a slap on the wrist.

R., Vol. 3 at 69. But the court provided reasons for not imposing such a stiff sentence on Beltran-Lopez. In granting him a two-level reduction for his minor role in the offense, the court found that Bowen had "made all of the major decisions, he was the principal player in this scheme, and he initiated all of the fraudulent ventures," R., Vol. 3 at 53, and that Beltran-Lopez "was substantially less culpable" than Bowen, *id.* at 56. Turning to the government's motion for a one-level reduction based upon Beltran-Lopez's cooperation, the court noted his lack of any criminal record and found that Bowen had "groomed" him for his role in the fraudulent scheme. *Id.* at 67. The court was also concerned with the government's request for a one-level reduction based upon Beltran-Lopez's cooperation, when it was seeking a two-level reduction for Bowen. It stated, "[W]hat bothers me in these cases, is when there is a deal to be made, it is the guy at the top, who knows all of the information,

7

that gets the biggest break." *Id.* at 87. Addressing the government's argument that Bowen had turned himself in first, the court responded that demonstrated the extent to which Bowen had "brainwashed and groomed" Beltran-Lopez such that "he would not turn against his mentor." *Id.* at 88.

Given the district court's stated reasons for sentencing Beltran-Lopez based upon his role in the offense as compared to Bowen's, and the court's reasons for denying Bowen any reduction based upon substantial assistance, Bowen does not show more than a speculative possibility that his sentence was improperly influenced by racial or age-related bias. "That is not enough to show error that was plain." *Johnson*, 756 F.3d at 1222 (ellipsis and internal quotation marks omitted).

## CONCLUSION

Because Bowen has not shown that the district court plainly erred in sentencing him based upon his age or his race, we grant the government's motion to enforce his appeal waiver and dismiss his appeal.

Entered for the Court
Per Curiam