**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 28, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLOS SHAWN WILLIAMS,

Defendant-Appellant.

No. 06-6140

(W.D. Oklahoma)

(D.C. No. CR-05-110-L)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.[**]

        In June of 2005, a federal grand jury returned a six-count indictment

against Carlos Shawn Williams for various crimes relating to the transportation of

minors across state lines to engage in prostitution and other illicit sexual

activities. Shortly thereafter, Mr. Williams entered into an agreement whereby he

---

        [*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

        [**] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

pleaded guilty to a violation of 18 U.S.C. § 2422(b) for using facilities and means of interstate commerce to persuade, induce, entice, and coerce a minor to engage in prostitution and other sexual activity, for which a person could have been charged with a criminal offense. In exchange for the government dismissing the six-count indictment in favor of a single charge, Mr. Williams agreed to accept a sentence within the recommended Guidelines range and waived his right to appeal. Mr. Williams asks this court to disregard his waiver of appellate rights, hold that the district court improperly classified him as a career offender pursuant to U.S.S.G. § 4B1.1(a), and vacate his sentence. We exercise jurisdiction under 18 U.S.C. § 1291. *See United States v. Hahn*, 359 F.3d 1315, 1324 (2004) (en banc) ("[T]his court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement."). For reasons set forth below, we enforce the waiver and dismiss.

## I. Background

The Federal Bureau of Investigation (FBI) arrested Mr. Williams after more than a year of investigation into a prostitution ring that spanned Oklahoma, Colorado, and Texas. The investigation revealed that Mr. Williams and several others were recruiting minors as young as thirteen to work as prostitutes. The FBI also reported that Mr. Williams, who worked as a pimp, raped and beat at least two of his prostitutes, including a seventeen year old girl, K.W. The

2

investigation suggests that Mr. Williams manipulated the prostitutes in his charge through threats of brutality against them and their children.

The Presentence Report (PSR) set Mr. Williams offense level at 26. Mr. Williams's extensive criminal history, which included no fewer than seven convictions for possessing, trafficking, and distributing controlled substances as well as numerous other run-ins with the law placed him in criminal history Category VI, the category reserved for the worst repeat offenders. The PSR also recommended that the court apply a "career offender" enhancement that would raise the offense level to 29. The career offender enhancement applies where the offense at issue is a crime of violence and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). When Mr. Williams pleaded guilty, the only undetermined issue was whether his violation of 18 U.S.C. § 2422(b), solicitation and coercion of a minor to engage in commercial prostitution, constituted a "crime of violence" which would trigger the career offender provision in Mr. Williams's case.

At the plea hearing, the district court made clear that it had not yet decided whether Mr. Williams's offense would make him a career offender, but that both Mr. Williams and the government would be bound by the terms of the plea bargain regardless of the decision. Both Mr. Williams and his lawyer said that they understood. The district court ultimately found that Mr. Williams's offense

3

was a crime of violence and applied the career offender enhancement, and raised Mr. Williams offense level to 29. An adjusted offense level of 29 combined with a criminal history Category VI yielded a guideline range of 120 to 150 months. The district court sentenced Mr. Williams to 135 months.

**II.**

This court employs a three-pronged analysis to determine whether to enforce a waiver of appeal. *Hahn*, 359 F.3d at 1325. We examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. . . ." *Id.*

A. *Scope of the Waiver of the Appellate Rights*

Mr. Williams claims that his appeal is beyond the scope of the bargain because "the agreement did not contain a specific situation where . . . the guideline range was calculated in violation of the Constitution." Aplt's Rep. Br. at 1. Unfortunately, Mr. Williams fails to illuminate what aspect of the sentence rendered it "in violation of the Constitution" and released him from his contractual obligations. *Id.* Since his opening brief focused entirely on the district court's determination that he is a career offender, presumably he believes this decision to be "illegal" and therefore beyond the scope of the bargain.

We construe narrowly the scope of a waiver of appellate rights and interpret any ambiguities against the government. *Hahn*, 359 F.3d at 1315. Even

4

under this liberal standard, the transcript of the plea hearing leaves little doubt that Mr. Williams waived his appellate rights. Mr. Williams agreed to a broad waiver that barred any attempt to "[a]ppeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." Aple's Br. at 14.

Moreover, the record makes clear that he agreed to accept the district court's determination with regard to his status as a "career offender" as part of the plea bargain. In fact, when the issue was raised, the United States Attorney interrupted the proceeding to ensure that Mr. Williams understood the terms of the bargain: "I just want to make sure that Mr. Williams understands that in the event the career offender provisions apply that's not a grounds to withdraw the plea at a later date at sentencing." Plea Hrg. Tr. at 20. The court explained no fewer than three times that Mr. Williams presented an issue that it had not confronted and that it would not rule until sentencing. Nevertheless, the district court made clear that both parties would be bound by the plea bargain regardless of the way the issue was resolved. In response to the government's and the district court's comments, Mr. Williams stated that he understood, and his counsel replied, "I understand that it's not grounds to withdraw the plea."

In light of the extensive discussion that took place at the plea hearing, Mr.

5

Williams' contention that the career offender determination was beyond the scope of his plea is baffling. Yet, as evidenced by the appeal filed less than nine months after this hearing, the lengthy in-court exchange slipped his mind. So much so he failed to mention the plea agreement in his opening brief. This is especially difficult to understand given that Mr. Williams was represented by the same attorney that appears as the counsel of record on this appeal. Whether this omission was due to absent mindedness or wishful thinking, Mr. Williams's agreement not to appeal the career offender ruling was clearly a basis of the bargain, and he is still bound by the agreement.

B. *Knowing and Voluntary Waiver*

*Hahn's* second requirement is satisfied because Mr. Williams's assent to the bargain was knowing and voluntary. Under *Hahn*, this court looks at two factors to assess a defendant's voluntariness. First, we "examine whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily." *Id.* at 1324. Here, the language was clear and there is no dispute that this condition was satisfied. Second, this court "looks for an adequate Federal Rule 11 colloquy." *Id.* at 1325. At his sentencing hearing, the district court asked Mr. Williams and his counsel a number of questions to ensure that no mental or emotional infirmity would compromise Mr. William's voluntariness. Plea Hrg. Tr. at 7-8. The court also engaged in an extensive discussion regarding the rights Mr. Williams would waive by foregoing

6

a trial by jury as well as his waiver of the right to appeal. *Id.* at 16. Moreover, Mr. Williams was represented by counsel. The record indicates that Mr. Williams attorney and the district court explained all aspects of the plea, including the guidelines and the career offender enhancement, and that Mr. Williams assented to each of the terms.

C. *Miscarriage of Justice*

Finally, Mr. Williams maintains that upholding the waiver would result in a "miscarriage of justice." Aplt's Reply Br. at 2. "The third prong of the enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice." *Hahn*, 359 F.3d at 1327. A miscarriage of justice occurs "(1) where the district court relied on an impermissible factor such as race; (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid; (3) where the sentence exceeds the statutory maximum; or (4) where the waiver is otherwise unlawful." *Id.* Mr. Williams asserts, without citing a single authority, that "[i]t would indeed be a miscarriage of justice to deny [Mr. Williams] his day in court when almost 4 [sic] years of his life hangs in the balance." Aplt's Reply Br. at 2.

He has stated no grounds for this court to find a miscarriage of justice, and none exist. Perhaps, in a more nearly perfect system, Mr. Williams would have been tried, and if convicted, sentenced by a jury of his peers on each of the six counts he faced. Perhaps this would have been justice. Yet, it is difficult to

7

conceive how it would be a miscarriage of justice for us to uphold a bargain whereby the government dismissed five of the six counts against Mr. Williams in exchange for the relatively trivial pledge that he would not appeal a sentence within the applicable Guidelines range. The very fact that this appeal was filed is particularly inconceivable in light of the district court's and the government's painstaking efforts to ensure sure that Mr. Williams and his counsel understood that the applicable guideline range could include the career offender enhancement.

Plea bargains are a necessity when offenses and offenders vastly exceed the our justice system's meager resources. Nevertheless, the railroad that is the criminal justice system may run only if both defendants and the government uphold their respective ends of plea bargains. In this case, the government was bamboozled. The government struck a bargain with a waiver of appellate rights so that it would avoid precisely this situation–wasting precious resources defending an utterly frivolous appeal that it contracted to circumvent.

The fact that Mr. Williams's opening brief omitted any mention of the waiver of appellate rights suggests that his counsel may have allowed a passion for zealous advocacy to overshadow the duty of candor he owes this court. While we appreciate the burdens imposed on defenders of the indigent, we should hold court-appointed counsel to the same professional standards as we would a well-compensated advocate. To that end, we remind Mr. Williams's counsel that

8

attorneys may always file a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), when there are no non-frivolous grounds for appeal.

## III.

For the foregoing reasons, we ENFORCE Mr. Williams waiver of appellate rights and DISMISS his appeal.

Entered for the Court,


Robert H. Henry
Circuit Judge