**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY RAIFSNIDER,

Defendant-Appellant.

No. 07-3099
(D. of Kan.)
(D.C. No. 06-CV-3165-MLB)

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

Larry Raifsnider seeks a certificate of appealability (COA) to appeal the

district court's order denying his 28 U.S.C. § 2255 habeas petition to vacate,

modify, or set aside his sentence. Raifsnider challenges the district court's

determination that (1) he knowingly and intelligently waived his right to appeal

his sentence, and (2) he was represented by constitutionally effective counsel.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

We agree with the district court that Raifsnider is not entitled to a COA and DISMISS this appeal.

## I. Background

On April 4, 2005, Raifsnider pleaded guilty to kidnaping and possession of a firearm during a crime of violence. His plea agreement contained the following waiver of the right to appeal:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)] and a motion brought under Title 18, U.S.C. § 3582(c)(2). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

R., Vol. I, Doc. 14 at 4–5. In a separate agreement that he signed on the same day, he also pleaded guilty to bank fraud. This plea agreement contained an identical waiver. Raifsnider filed a motion to withdraw his pleas on May 26, 2005, and subsequently withdrew the motion. The court sentenced Raifsnider on

July 8, 2005, and imposed a 30-year sentence for kidnaping and possession of a firearm during a crime of violence, and a concurrent 30 year sentence for bank fraud.

Raifsnider filed a pro se § 2255 habeas petition on June 16, 2006, alleging the following: (1) ineffective assistance of counsel in the negotiation of his plea agreement; (2) lack of jurisdiction by the district court that sentenced him; (3) violation of Rules 3, 4, 5, 20, and 40 of the Federal Rules of Criminal Procedure; and (4) illegal extradition from Oklahoma to Kansas. The court dismissed claims 2, 3, and 4, agreed to hold an evidentiary hearing on the ineffective assistance of counsel claim, and appointed attorney Kari Schmidt to represent Raifsnider in that hearing.

After the evidentiary hearing was completed, the district court concluded Raifsnider knowingly and intelligently waived all appellate rights except for ineffective assistance of counsel. Because the court determined Raifsnider's attorney was constitutionally effective, the court denied him relief under § 2255.

## II. Discussion

Provisions in plea agreements waiving the right to appeal and collaterally attack a conviction and sentence are enforceable if (1) the disputed issue falls within the scope of the waiver, (2) the defendant knowingly and voluntarily waived his rights, and (3) the waiver will not result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per

curiam). A miscarriage of justice occurs (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful. *Id.* at 1327.

On appeal, Raifsnider argues the district court erred in concluding that (1) he knowingly and intelligently waived his rights, and (2) he received constitutionally effective assistance in the negotiation of his plea agreements. We review the district court's legal rulings de novo and its findings of fact for clear error, *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).

*A. Knowing and Intelligent Waiver*

The defendant bears the burden of demonstrating that his waiver was not knowing and voluntary. *United States v. Edgar*, 348 F.3d 867, 872–73 (10th Cir. 2003). When evaluating the validity of a waiver, a court primarily considers "'whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily' and whether there was 'an adequate Federal Rule of Criminal Procedure 11 colloquy.'" *United States v. Leon*, 476 F.3d 829, 834 (10th Cir. 2007) (quoting *Hahn*, 359 F.3d at 1325).

We agree with the district court that the plea agreements clearly state that Raifsnider "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence."

R., Vol. I, Doc. 14 at 4; R., Vol. I, Doc. 38, Ex. A. Furthermore, the court conducted the required plea colloquy, and the defendant testified under oath that he understood the consequences of the plea agreement, did not have any mental problems, had sufficient time to discuss his case with his counsel, and was satisfied with his counsel's representation. In a subsequent hearing on the withdrawal of his motion to withdraw his plea, he again testified under oath that he understood the consequences of the waiver. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Raifsnider nonetheless argues that he lacked the mental capacity to make a knowing and intelligent waiver. He claims statements he made to the FBI suggest that he is incompetent. After Raifsnider was arrested on November 29, 2004, he told FBI agents that he:

1. made 20,000–25,000 fictitious identifications;
2. designed various toxins and explosives;
3. took guerilla warfare training in Mexico;
4. created a formula that could be brought on airplanes undetected;
5. murdered for hire seven or eight people in Mexico and Canada;
6. was hired by the IRA to kill someone in Canada with a poison blow dart with poison from a Brazilian frog;
7. was hired by and worked for John Gotti and other Italian organized crime ring leaders;

8. supplied foreign governments with documents relating to American military bases;
9. had information that Iran wanted to take out various consumer markets in the United States, such as WalMart;
10. trained with a Colombian armed forces group
11. met with Al-Qaeda operatives in Mexico.

Presentence Report ("PSR"), Aplt. App. 16–19. According to the PSR, "authorities were never able to verify information regarding the defendant's reported murders or connections to foreign government." *Id.* at 19, ¶ 87. While these statements suggest Raifsnider has a colorful imagination, the PSR by itself fails to establish that Raifsnider was incompetent at the time of the April 4, 2005, plea hearing.

In a memorandum submitted to the court prior to the § 2255 evidentiary hearing, Raifsnider also made the following assertion: "[m]y attorney did not inform the court nor investigate the head trauma I suffered years back and refused to have me evaluated for compitency [sic] that I have nearological [sic] damage and that my actions stemed [sic] from this head trauma." Memorandum of Law in Support of 28 U.S.C. § 2255 Motion, R., Vol. 1, Doc. 38 at 11. At the evidentiary hearing, Raifsnider and his attorney failed to produce medical testimony or any other evidence substantiating this claim.

The United States rebutted Raifsnider's claim of incompetency by submitting an affidavit from Raifsnider's trial attorney, Assistant Federal Public Defender Steven Gradert. He states,

Raifsnider claims that Affiant did not address the issues related to his claim that he had suffered a head trauma that might have affected his mental capacity. Affiant submits that these issues were not raised with the Court. Affiant did discuss the possibility of seeking a psychological evaluation with the defendant based on both the history of the defendant and the Affiant's own observations about the behavior of the defendant during the representation. The defendant requested that he be evaluated but changed his mind and did not want to be sent away.

Affiant was convinced that Raifsnider understood his charges as he did his own research regarding many issues and was clearly able to assist with his defense. Affiant was satisfied that Raifsnider knew and understood the terms of his plea agreements and the sentence he was to receive.

Aff. of Steven Gradert, R., Vol. I, Doc. 46 at 5–6, ¶ 9. Based on this record, we conclude Raifsnider did not produce sufficient evidence establishing that he lacked the capacity to knowingly and voluntarily agree to waive his right to appeal his sentence.

### B. Ineffective Assistance of Counsel

"[C]ounsel is strongly presumed to have rendered adequate assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). When a defendant challenges a guilty plea based on ineffective assistance of counsel, the defendant must first show that "counsel's performance was deficient." *Id.* at 687. In order to prove deficient performance, the defendant must identify acts or omissions that are "outside the wide range of professionally competent assistance." *Id.* at 690. Second, a defendant must establish prejudice. *Id.* A defendant demonstrates prejudice by showing that the attorney's ineffective performance "affected the

outcome of *the plea process*.  In other words . . . that there is a reasonable probability that, but for counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial."  *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (emphasis added)).

Raifsnider argues Gradert's performance was deficient because he failed to request an evaluation of Raifsnider's competency.  In support of this proposition, he quotes an article describing Rule 1.14 of the Kansas Rules of Professional Conduct.  According to the article, "the lawyer may make necessary disclosures to protect the client, even when the client directs the lawyer not to disclose, and suggests that before making disclosures, a lawyer should consider whether a person is likely to use the information to act adversely to the client's interests."  Aplt. Br. 8 (quoting Sheila Reynolds, *Revised Rule for Representing Clients with Diminished Capacity*, J. Kan. B. Ass'n, July–Aug. 2007, at 24, 25).  The rule the author was describing, however, did not become effective until July 1, 2007, *id.* at 24, and therefore did not govern Gradert's conduct.

The prior version of Rule 1.14 indicates that an attorney is not required to seek an evaluation of a client's competency if he does not believe it is in the client's best interest.  The comment to the rule explains, "disclosure of the client's disability can adversely affect the client's interest.  For example, raising the question of disability could, in some circumstances, lead to proceedings for

involuntary commitment. The lawyer's position in such cases is an unavoidably difficult one. The lawyer *may* seek guidance from an appropriate diagnostician." Kan. Rule Prof'l Conduct R. 1.14 cmt. (2006) (emphasis added). The rule does not indicate that the attorney *must* seek guidance from a medical expert.

As noted above, Gradert stated he discussed with Raifsnider the possibility of obtaining a psychological evaluation. "The defendant requested he be evaluated but changed his mind and did not want to be sent away." Aff. of Steven Gradert, R. Vol. I, Doc. 46 at 5, ¶ 9. Gradert also concluded it was unnecessary to raise the issue before the court because he was "convinced that Raifsnider understood his charges as he did his own research regarding many issues and was clearly able to assist with his defense. Affiant was satisfied that Raifsnider knew and understood the terms of his plea agreements and the sentence he was to receive." *Id*. at 6, ¶ 9. The district court also held an evidentiary hearing regarding Raifsnider's ineffective assistance of counsel claim. Gradert testified at the hearing, and Raifsnider's attorney had ample opportunity to cross examine him. The district court concluded that Raifsnider "was ably represented throughout this case by qualified, competent counsel. There is no evidence that Mr. Gradert's performance was deficient in any manner." R., Vol. I, Doc. 59 at 21.

Because Gradert's representation was within the "wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, we agree that

Raifsnider failed to assert a colorable claim of ineffective assistance of counsel that would vitiate the plea agreement.

### III. Conclusion

Accordingly, we DENY Raifsnider's application for a COA and DISMISS this appeal.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge