FILED
United States Court of Appeals
Tenth Circuit

January 13, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARREL LEE FERGUSON,

    Defendant-Appellant.

No. 09-3136

(D.C. No. 6:08-CR-10229-WEB-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA, ANDERSON,** and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant-Appellant Darrel Lee Ferguson entered a plea of guilty to one count of possession with the intent to distribute 120 grams of a substance

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

containing methamphetamine. Experiencing a change of heart, Ferguson later moved to withdraw his plea. The district court denied the motion, and subsequently sentenced Ferguson to 150 months' imprisonment. Ferguson argues on appeal that the district court abused its discretion in denying his motion to withdraw his plea. We have jurisdiction pursuant to 28 U.S.C. § 1291. We agree with the government's argument that Ferguson has waived his right to appeal, and therefore dismiss this appeal.[1]

I

A grand jury empaneled by the United States District Court for the District of Kansas issued a three-count indictment against Ferguson and a co-defendant, charging Ferguson with one count of possession with the intent to distribute 120 grams of a substance containing methamphetamine, one count of possession of several firearms after conviction of a felony, and one count of unlawful possession of two unregistered destructive devices. Evidence in support of the indictment was found during the execution of a search warrant at Ferguson's residence. During the search, Kansas law enforcement officers located Ferguson inside the first floor bedroom of his residence, and within that bedroom the officers found approximately 100 grams of a mixture containing

---

[1] Although it is preferred that the government file a motion to enforce an appeal waiver before briefing commences, failure to file such a motion "does not preclude a party from raising the issue in a merits brief." See Tenth Cir. R. 27.2(A)(1)(d), (2), (3).

methamphetamine, approximately 38 grams of which was located in a bag hanging around Ferguson's neck. The officers also found Ferguson's social security card inside the bedroom, and inside a bedroom safe the officers found personal documents relating to Ferguson's children.[2] The officers found more methamphetamine throughout the house, as well as several firearms.

Pursuant to a written plea agreement, Ferguson entered a plea of guilty to the possession of methamphetamine count. For the factual basis underlying his plea, Ferguson admitted to possessing with the intent to distribute "approximately 120 grams of a mixture or substance containing methamphetamine (there was more than 35 grams pure methamphetamine in that mixture)." R. Vol. I at 28. The agreement also contained a waiver of the right to appeal and the right to collateral attack, which read as follows:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in

---

[2] The officers also found the wallet and driver's license of an individual named Joe Ramsey inside the bedroom.

3

which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Proc. 60(b).  In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.  However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

Id. at 32-33.  The agreement also acknowledged that Ferguson understood "that if the court accepts this plea agreement but imposes a sentence with which [Ferguson] does not agree [he] will not be permitted to withdraw this plea of guilty."  Id. at 32.

Ferguson's plea hearing was scheduled for March 17, 2009.  That morning, after discussions with his counsel in the United States Marshal's lockup, Ferguson expressed a desire to proceed to trial.  However, when Ferguson arrived in court for the hearing, he had decided to enter a plea of guilty.  Sensitive to Ferguson's hesitation, the district court continued the hearing and reminded Ferguson that "the Court has nothing to do with what this – what your agreement with the Government is."  R. Vol. III at 6.  When the hearing reconvened approximately forty-five minutes later, Ferguson's counsel indicated that the parties had resolved their concerns, and Ferguson entered a plea of guilty to possession with

4

the intent to distribute approximately 120 grams of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

After Ferguson entered his plea, a Presentence Investigation Report (PSR) was prepared which calculated Ferguson's sentencing range at 97 to 121 months' imprisonment. Following receipt of this report, Ferguson filed a motion to withdraw his plea, claiming he was only guilty of possessing "the one ounce in the bag around his neck which he possessed for personal use." R. Vol. I. at 37. Ferguson claimed that the remaining amount of methamphetamine that law enforcement uncovered at his residence was "left in his house by another person, also known to law enforcement, without Mr. Ferguson's knowledge." Id. In response to Ferguson's motion to withdraw his plea, the probation office filed a revised PSR. Because the allegations contained in Ferguson's motion directly contradicted his sworn affirmation during the plea colloquy that he possessed 120 grams of a substance containing methamphetamine, the revised PSR recommended applying a two-level adjustment for obstruction of justice under U.S.S.G. § 3C1.1, and recommended withdrawing the three-level adjustment for acceptance of responsibility Ferguson was previously entitled to receive. These revisions increased Ferguson's sentencing range to 168 to 210 months' imprisonment.

The district court scheduled a May 11, 2009 hearing on Ferguson's motion to withdraw his plea and for sentencing, should the motion be denied. During that

5

hearing, the district court received testimony from Ferguson and also from two of the Kansas law enforcement officers who were present during the search. Ferguson testified that he did not use the first floor bedroom, that "basically anybody that came over" used that bedroom, and that an individual named Joey Ramsey was occupying that bedroom the day that the officers executed the search warrant. R. Vol. III at 55, 58. Ferguson also explained why he was hesitant to enter a plea of guilty on March 17, 2009. He testified that during the morning of his plea hearing he had initially decided to proceed to trial, but after a United States Marshal allegedly told him that the rate of conviction was "98 percent," Ferguson wanted his counsel to ask the government to "give us an exact time span that he would sentence me to if I were to accept a plea." Id. at 62. Even though the government refused to provide any sentence estimate, Ferguson proceeded to enter his plea of guilty.

Following the conclusion of Ferguson's testimony, the district court denied Ferguson's motion to withdraw his plea. The district court granted Ferguson a downward variance from his guideline range of 168 to 210 months, and sentenced him to 150 months' imprisonment. Ferguson then filed this appeal contending the district court erred in denying his motion to withdraw his plea.

II

We enforce a criminal defendant's waiver of appellate rights when (1) "the disputed appeal falls within the scope of the waiver of appellate rights;" (2) the

6

defendant's waiver of appellate rights was knowing and voluntary; and (3) enforcing the waiver will not result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004).

### A.    *Scope of Waiver*

"'An appeal of a denial of a motion to withdraw a guilty plea is an attempt to contest a conviction on appeal and thus falls within the plain language of an appeal waiver provision.'" United States v. Leon, 476 F.3d 829, 832 (10th Cir. 2007) (quoting United States v. Elliott, 264 F.3d 1171, 1174 (10th Cir. 2001)) (alterations omitted). Ferguson concedes that his appeal, which challenges the district court's denial of his motion to withdraw his plea, falls within the scope of the appellate waiver that he signed. See Aplt.'s Reply Br. at 1 ("Notwithstanding the discomfort associated with the fact that enforcement of the waiver to a challenged agreement means all lower court decisions denying a motion to set aside the agreement are insulated from appellate review, that is clearly the law."). Given that Ferguson waived his right to appeal "any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed," R. Vol. I at 32, we agree that his challenge to the district court's denial of his motion to withdraw his plea falls within the scope of the appellate waiver that he signed. We next address whether the waiver is enforceable.

### B.    *Knowing and Voluntary Waiver*

We examine two factors to determine whether a waiver of appellate rights

7

is knowing and voluntary. "First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. "Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy." Id. The defendant bears the burden of establishing that "he did not knowingly and voluntarily enter into his plea agreement." Id. at 1329.

The appellate waiver contained in Ferguson's plea agreement stated that Ferguson "knowingly and voluntarily waives any right to appeal," R. Vol. I at 32; the agreement further acknowledged that Ferguson had "sufficient time" to discuss the agreement with his counsel; Ferguson read the agreement, understood it, and agreed that it was true and accurate; and Ferguson was entering his plea of guilty "freely and voluntarily," id. at 34-35. Accordingly, the language of the plea agreement supports the conclusion that Ferguson's waiver of appellate rights was knowing and voluntary.

The district court's Rule 11 colloquy also supports this conclusion. Before his counsel presented the terms of the plea agreement to the court, Ferguson acknowledged that he "may be giving up any right to challenge [his] conviction on appeal." R. Vol. III at 13. After the presentation of the terms of the plea agreement, the district court specifically addressed the appellate waiver and Ferguson confirmed his understanding that he was "giving up any right to appeal [the] conviction or sentence" that the district court imposed. Id. at 22.

8

Conceding "no evidence of a failed colloquy," Ferguson contends that "this case presents circumstances which invite looking beyond the spoken words." Aplt.'s Reply at 4. Ferguson contends that his vacillation between first insisting on a trial that morning, then changing his mind after the United States Marshal allegedly informed him that the rate of conviction was 98 percent, and then again vacillating while in open court "until he finally stood before the [c]ourt and entered a plea of guilty," place the knowing and voluntary nature of his plea "genuinely in question." Id. We reject this argument because the record presented does not indicate that Ferguson's final decision to enter a plea of guilty was not a knowing and voluntary decision. Ferguson was afforded time to review his options; when the district court became aware of Ferguson's initial hesitation to enter a plea, the court continued the proceedings to allow the parties time to address and resolve any existing concerns. We also note that none of Ferguson answers during the subsequent Rule 11 colloquy call into question the knowing and voluntary nature of his plea. Under oath, Ferguson affirmed that he and his attorney had thoroughly reviewed the plea agreement, he was entering his guilty plea freely and voluntarily, no one had used any force or made any threats to coerce Ferguson to plead guilty, and that the only promises made to Ferguson were those contained in the plea agreement. When the district court concluded the colloquy by asking Ferguson if he knew of "any reason why [the court] shouldn't accept [his] plea of guilty," Ferguson said "[n]o." R. Vol. III at 25.

9

These "[s]olemn declarations in open court carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 74 (1977), and Ferguson has offered nothing to erode the force of his statements made in open court and in the written plea agreement he and his counsel signed. Accordingly, Ferguson has not satisfied his burden of demonstrating that his waiver was not knowing and voluntary.

### C. *Miscarriage of Justice*

Finally, our enforcing an appellate waiver will result in a miscarriage of justice only when (1) "the district court relied on an impermissible factor such as race," (2) the defendant receives ineffective assistance of counsel in connection with the negotiation of the waiver, thus invalidating the waiver, (3) "the sentence exceeds the statutory maximum," or (4) "the waiver is otherwise unlawful." Hahn, 359 F.3d at 1327 (citations and quotations omitted). Ferguson concedes that the first three scenarios do not apply, but argues that his waiver is otherwise unlawful. To satisfy this scenario, the error alleged "must seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id. (citations, quotations, and alterations omitted). In this regard, Ferguson argues that his waiver is unlawful because he "is left with an empty but burning desire to exercise his constitutional right to a trial . . . . [and] there is much more to be gained in allowing [him] to exercise his constitutional right than in avoiding inconvenience to the Court and the parties." Aplt.'s Reply at 4-5. Ferguson's argument does not identify any error. Given the knowing and voluntary nature of

10

his plea, Ferguson is simply expressing his subsequent misgivings about his guilty plea. As such, enforcing the appellate waiver in this case will not result in a miscarriage of justice.

## III

Ferguson executed an enforceable waiver of his appellate rights. His appeal, which challenges the district court's denial of his motion to withdraw his plea, falls within the scope of his waiver and is therefore DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge