**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

ROBERTO MONTOYA-RODRIGUEZ,
a/k/a Roberto Montoya,

　　　　Defendant - Appellant.

No. 09-5145
(D.C. No. 4:09-CR-00061-CVE-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

　　　After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

　　　Defendant-appellant Roberto Montoya-Rodriguez appeals the district court's denial of his motion to suppress. He also contends that the district court erred in failing to consider several of his arguments during sentencing. We take jurisdiction under 28

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On April 4, 2009, Tulsa County Sheriff's Deputy Christopher Yerton and Immigration and Customs Enforcement (ICE) Special Agent Stephen Williams were patrolling the Wanenmacher Gun Show at the Tulsa County Fairgrounds. Deputy Yerton and Special Agent Williams were part of an ICE task force attempting to disrupt the illegal trafficking of weapons into Mexico. Before entering the gun show, patrons were required to disclose any firearms on their person for inspection and to keep any firearms unloaded and visible at all times. Gun show personnel also marked each checked firearm with a yellow zip-tie, which was affixed to the gun's action and prevented each gun from firing.

Deputy Yerton and Special Agent Williams were stationed near an entrance observing patrons of the gun show enter and exit when they saw Mr. Montoya-Rodriguez lift up his shirt, revealing a pistol concealed in the waistband of his pants. The firearm did not appear to have the required zip-tie, indicating it had not been checked nor unloaded in accordance with gun show rules.

Deputy Yerton and Special Agent Williams recall the events following their observation of the firearm differently. At the suppression hearing, Deputy Yerton testified that he immediately approached Mr. Montoya-Rodriguez, handcuffed him, and told him he was under arrest for carrying a concealed weapon. He then checked the firearm to make sure it was unloaded and handed it to Special Agent Williams.

According to Deputy Yerton, at that point Special Agent Williams "stepped in and asked [Mr. Montoya-Rodriguez] about his immigration status." The officers then escorted Mr. Montoya-Rodriguez to a private area where they conducted another pat-down search for weapons and finished questioning him.

Special Agent Williams testified, however, that he and Deputy Yerton did not immediately arrest Mr. Montoya-Rodriguez but simply approached him and began asking questions. Indeed, Special Agent Williams testified that he believed Mr. Montoya-Rodriguez was not placed under arrest until after he (Special Agent Williams) finished questioning him. According to Special Agent Williams, Deputy Yerton handled the arrest and the concealed weapon.

On May 6, 2009, Mr. Montoya-Rodriguez was charged with being an illegal alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) ("Count One") and possessing a firearm after a misdemeanor crime of violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) ("Count Two"). Mr. Montoya-Rodriguez filed a motion to suppress, challenging the validity of his arrest and seeking suppression of the firearm. The district court denied the motion. Thereafter, Mr. Montoya-Rodriguez entered into a plea agreement in which he pleaded guilty to Count One, generally waived his right to appeal, but retained the right to appeal the denial of his motion to suppress. In exchange for the guilty plea, the government agreed to dismiss Count Two of the indictment.

On July 16, 2009, the district court accepted Mr. Montoya-Rodriguez's guilty plea.

He was subsequently sentenced to fifteen months' imprisonment, followed by three years of supervised release. Mr. Montoya-Rodriguez now appeals.

## II. DISCUSSION

Mr. Montoya-Rodriguez contends that the district court erred in denying his motion to suppress because he was arrested, not based on probable cause, but "because he looked Hispanic" and temporarily put a gun in his waistband. He also asserts the district court erred in "failing to recognize his arguments for sentencing disparity based on so-called fast track programs [available] in other districts but not in the district where [he] was charged" and in denying a downward variance based on his "cultural assimilation."

We begin by noting that Mr. Montoya-Rodriguez generally waived his appellate rights as part of his plea agreement. Such plea agreements and their concomitant waivers of appellate rights are generally enforced in this circuit. *United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc). In *Hahn*, we held that appeal waivers are enforceable as long as: (1) "the disputed appeal falls within the scope of the waiver of appellate rights"; (2) "the defendant knowingly and voluntarily waived his appellate rights"; and (3) "enforcing the waiver would [not] result in a miscarriage of justice." *Id.* at 1325. We assess the voluntariness of the waiver by looking primarily to the plea agreement and the plea colloquy. *Id.*

We have reviewed the plea agreement, the transcripts of the plea and sentencing hearings, and the briefs filed by Mr. Montoya-Rodriguez and the government, and we conclude that the *Hahn* factors have been satisfied. First, the plea agreement provides

that Mr. Montoya-Rodriguez waived "the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." Because Mr. Montoya-Rodriguez is attempting to challenge the imposition of his sentence, this appeal is within the scope of the waiver.

Second, the language of the plea agreement indicates that Mr. Montoya-Rodriguez entered into the agreement knowingly and voluntarily. Indeed, immediately following the appellate waiver provisions, the plea agreement provides: "[Mr. Montoya-Rodriguez] expressly acknowledges that counsel has explained his appellate . . . rights; that [he] understands his rights; and that [he] knowingly and voluntarily waives those rights as set forth above." Moreover, during the plea colloquy, Mr. Montoya-Rodriguez confirmed that he was knowingly and voluntarily waiving his appellate rights. Therefore, we find that Mr. Montoya-Rodriguez's decision to waive his appellate rights was knowing and voluntary.

Third, there is no evidence that enforcing the waiver would result in a miscarriage of justice, and Mr. Montoya-Rodriguez does not contend otherwise. *See United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001) (listing four scenarios under which enforcing an appeal waiver would result in a miscarriage of justice). Accordingly, we conclude that the appellate waiver is enforceable and do not address Mr. Montoya-Rodriguez's sentencing arguments.

We do address, however, Mr. Montoya-Rodriguez's claim that the district court erroneously denied his motion to suppress because the plea agreement expressly exempts

such claims from the scope of the appellate waiver. "In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous" but "review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Lyons*, 510 F.3d 1225, 1234 (10th Cir. 2007) (quotations omitted).

Mr. Montoya-Rodriguez's basic contention on appeal is that despite seeing the gun stowed in his waistband, Deputy Yerton did not have probable cause to arrest him. He notes that there were numerous firearms for sale at the event and argues that Deputy Yerton could not have known whether the gun was merchandise for sale, how long the gun had been in Mr. Montoya-Rodriguez's waistband, or whether he had a permit to carry a concealed firearm. He also alleges that his arrest was racially motivated. The government concedes that Deputy Yerton's seizure of Mr. Montoya-Rodriguez constituted a warrantless arrest, but it maintains that Deputy Yerton had probable cause to arrest Mr. Montoya-Rodriguez upon seeing the concealed firearm.

"The touchstone under the Fourth Amendment is reasonableness." *United States v. Villa*, 589 F.3d 1334, 1338 (10th Cir. 2009). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "In evaluating the existence of probable cause, we consider whether the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable

caution in the belief that an offense has been or is being committed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quotations omitted). "[P]robable cause does not require metaphysical certitude or proof beyond a reasonable doubt"; rather, it "is a matter of probabilities and common sense conclusions." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (quotations omitted).

Under Oklahoma law, it is illegal to carry a concealed weapon without a license. Okla. Stat. tit. 21, §§ 1272 and 1290.1 et seq. (generally prohibiting the carrying of concealed weapons but allowing state to grant licenses to carry a concealed handgun). Before arresting Mr. Montoya-Rodriguez, Deputy Yerton and Special Agent Williams observed a concealed firearm in his waistband. It was apparent from the concealed nature of the firearm and the absence of a yellow zip-tie that Mr. Montoya-Rodriguez had evaded the gun show's firearm checkpoint. The lack of a zip-tie also indicated the gun was possibly still capable of firing. Because of his noncompliance with the gun show rules and the concealed nature of the weapon, a reasonable officer could believe that Mr. Montoya-Rodriguez was violating Oklahoma's general prohibition against carrying concealed firearms. It is certainly reasonable to conclude that someone who willingly violates a gun show's requirement that all outside guns be checked, tied, and visible has a significant reason for doing so, including perhaps the lack of a permit or license for the firearm. Accordingly, under these circumstances, Deputy Yerton and Special Agent Williams had probable cause to arrest Mr. Montoya-Rodriguez for violating Oklahoma law.

Finally, because our determination on the existence of probable cause is an objective one, an officer's subjective reason for an arrest is generally irrelevant. *Fogarty*, 523 F.3d at 1156. Accordingly, we do not address Mr. Montoya-Rodriguez's argument that Deputy Yerton and Special Agent Williams arrested him because he looked Hispanic. The officers had probable cause to arrest Mr. Montoya-Rodriguez for violating state law; therefore, the district court properly denied his motion to suppress the firearm.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Montoya-Rodriguez's motion to suppress. Additionally, we do not address Mr. Montoya-Rodriguez's arguments with regard to his sentence because he has waived his right to raise such arguments on appeal.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge