**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY DARNELL EASON,

Defendant-Appellant.

No. 11-6027
(D.C. No. 5:09-CR-00001-M-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

After entering into a written plea agreement that included an appeal waiver,

defendant Larry Eason pled guilty to one count of distributing approximately

114.9 grams of crack cocaine. The district court sentenced Eason to 360 months'

imprisonment, which was at the bottom of what the court determined was the

appropriate sentencing guideline range. When Eason appealed his sentence, the

---

[*] This panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

United States moved to enforce the appeal waiver, *see United States v. Hahn*,

359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

<u>Belated Response to Motion to Enforce</u>

At the outset, we note that Eason failed to file a response to the motion to

enforce within the time allowed by this court, despite receiving two extensions of

time. Eason did eventually file a response, accompanied by a motion to file the

response out of time. In that motion, Eason's counsel explained that he had

intended to file an *Anders*[1] brief in response to the motion to enforce, but just

before the response was due, he thought of a potentially meritorious challenge to

the motion to enforce. He then spent several days researching the new issue and

drafting a response based on it.[2] Although Eason's belated response lacks any

merit, we will nonetheless accept the late filing and consider the response in

reviewing the government's motion to enforce.

<u>Background</u>

Eason executed a written plea agreement with the United States in which he

"knowingly and voluntarily waive[d] his right to: [a]ppeal or collaterally

challenge his guilty plea, sentence and restitution imposed, and any other aspect

of his conviction." Mot. to Enforce Waiver, Attach. 1 ("Plea Agrmt.") at 6. More

---

[1]     *Anders v. California*, 386 U.S. 738 (1967).

[2]     Counsel did ask for a third extension of time to complete this work, but the court denied counsel's request because it had previously told him it would not grant any further extensions of time.

-2-

specifically, he waived his right to appeal "his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." *Id.*

After the court accepted Eason's plea, the U.S. Probation Office issued a Presentence Report ("PSR") in May 2009 that calculated an advisory guideline range of 262-327 months based on Eason receiving a downward adjustment for acceptance of responsibility[3] and an upward adjustment for being a career offender.[4] Eason did not object to the PSR other than to note that one of the prior convictions listed was not his, but that its removal would not affect his guideline range.

Shortly after the PSR was issued, Eason was released to home detention with a GPS tracking device on his ankle. Several days before the August 10 sentencing hearing, Eason removed the tracking device and fled the state. He was arrested fourteen months later.

---

[3] The plea agreement contemplated that Eason would likely receive a 2-level downward adjustment pursuant to USSG § 3E1.1(a) if he cooperated with the government and otherwise complied with the plea agreement and that the government might move for an additional 1-level downward adjustment under § 3E1.1(b) if appropriate. Plea Agrmt. at 4.

[4] A copy of this PSR is not in the record before us, but we can discern the pertinent aspects of the report from the parties' filings here and from the transcript of the sentencing hearing.

The Probation Office issued a revised PSR in November 2010 that calculated a new guideline range of 360 months to life in light of Eason's flight. The new calculation did not make any downward adjustment in the base offense level for acceptance of responsibility and it made a 2-level upward adjustment for obstruction of justice. It also gave Eason the benefit of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, which went into effect November 1, 2010, and lowered Eason's offense level by 2 points.

Eason did not object to the new adjustments made in the revised PSR, and his counsel advised the court at sentencing that "we believe the report is fair as written." Mot. to Enforce, Attach. 3 ("Sent'g Tr."), at 3. Eason argued only that the court should not sentence him as a career offender.

<u>Enforcement of the Appeal Waiver</u>

In reviewing the government's motion to enforce the appeal waiver, we must consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. Eason contends that his appeal does not fall within the scope of his waiver and that even if it does, it would be a miscarriage of justice to enforce the waiver.

*1. Scope of the Waiver*

Eason argues that his appeal does not fall within the scope of his waiver because he was sentenced above the guideline range that he thought would apply at the time he entered his guilty plea. He notes that the May 2009 PSR calculated the advisory guideline range as 262-327 months, which was lower than the 360-month sentence the court ultimately imposed in January 2011. Eason's argument has no merit.

The plea agreement did not specify that any particular guideline range would apply. Rather, it provided that the sentence to be imposed was within the sole discretion of the court, Plea Agrmt. at 10, which would determine what guideline range to apply, *id.* at 6-7. Eason waived his right to appeal any sentence that was "within or below the advisory guideline range determined by the Court to apply to this case." *Id.* at 6. And he does not dispute–nor could he–that the sentence he received was within the guideline range "determined by the Court to apply to this case."

Eason's expectation at the time he pled guilty that the court would apply a lower guideline range than it ultimately did does not affect the scope or validity of his waiver. *See Hahn*, 359 F.3d at 1327 (rejecting "any notion that a defendant must know with specificity the result he forfeits before his waiver is valid"). And given that the only reason the court applied a higher sentencing range was because Eason absconded before he could be sentenced, his contention that this

appeal is not within the scope of the waiver because the court applied a higher guideline range than he expected is ludicrous. Eason's appeal is clearly within the scope of his waiver.

### 2. *Knowing and Voluntariness of the Waiver*

Eason bears the burden of establishing that his waiver was not knowing and voluntary. *See United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1721 (2010). Because he makes no such argument, we may assume the waiver was knowing and voluntary. *See id.* And our review of the record would lead us to the same conclusion, in any event.

### 3. *Miscarriage of Justice*

Eason contends that even if this appeal is within the scope of the appeal waiver, it would be a miscarriage of justice to enforce the waiver.

> A miscarriage of justice occurs [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.

*United States v. Smith*, 500 F.3d 1206, 1212 (10th Cir. 2007) (internal quotation marks omitted).

Eason contends it would be a miscarriage of justice to enforce the waiver because it "would cause [him] to be unlawfully incarcerated in prison for an additional 8.16 to 2.75 years" beyond the guideline range calculated in the May 2009 PSR. Resp. to Mot. to Enforce at 9. This "unlawfully increased prison

term," he argues, "would be an error that seriously affects the fairness and integrity of the judicial proceedings, as well as violating the Eighth Amendment . . . prohibition against cruel and unusual punishment." *Id.* at 10.

The miscarriage of justice exception "looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." *Smith*, 500 F.3d at 1213 (citation and internal quotation marks omitted). That Eason expected to receive a different sentence when he signed the plea agreement containing the appeal waiver than the sentence he did receive does not make the waiver unlawful. Nor would enforcement of the waiver seriously affect the fairness, integrity, or public reputation of judicial proceedings: Eason received a higher sentence than he originally expected solely because he fled the state after he entered his guilty plea.

We grant Eason's Motion to File Response to Motion to Enforce Appeal Waiver Out of Time. We also grant the government's Motion to Enforce Appeal Waiver, and we dismiss the appeal.

ENTERED FOR THE COURT
PER CURIAM