**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGER TERRY GURLEY, JR.,
a/k/a Dark Side,

    Defendant - Appellant.

No. 23-6193
(D.C. No. 5:23-CR-00018-F-1)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Roger Terry Gurley, Jr., appeals from his sentence, but his plea agreement contains an appeal waiver. The government now moves to enforce that waiver under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc). Through counsel, Gurley responds that the appeal waiver is unenforceable because of an alleged misunderstanding, or allegedly substandard advice from his previous attorney, about the scope of the sentencing hearing that would follow his guilty plea. We reject these arguments and grant the government's motion.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND & PROCEDURAL HISTORY

In December 2002, Gurley's ex-girlfriend and her new boyfriend went to a motel in Oklahoma City to retrieve the ex-girlfriend's belongings from a room she had shared with Gurley. Gurley was still there. He and the new boyfriend were both armed and they exchanged gunfire, but no one was hurt. Officers later located Gurley in possession of a handgun with a scratched-off serial number.

The following month, a grand jury in the Western District of Oklahoma indicted Gurley for being a felon in possession of a firearm. The grand jury also indicted him for possession of a firearm with an obliterated serial number.

Gurley agreed to plead guilty to the first charge in exchange for dismissal of the second charge. The parties executed a plea agreement embodying the terms of their deal, including Gurley's "knowing[] and voluntar[y] waive[r]," Suppl. R. at 31, of his right to appeal on any ground except the substantive reasonableness of a sentence above the range recommended by the sentencing guidelines, should the district court impose such a sentence. The agreement also stated that the maximum prison sentence for the charge to which he would plead guilty is fifteen years, and the sentence ultimately imposed would be up to the district court.

At the ensuing change-of-plea hearing, the district court conducted a thorough colloquy to ensure Gurley understood the terms of his agreement, specifically including the appellate waiver, which the district court discussed from multiple angles. For example, the district court asked Gurley if he understood that he was waiving his "right to appeal the sentence that I impose in this case, as long as that

2

sentence is within or below the advisory guideline range that I apply in this case."

R. at 17. Gurley responded that he understood. The district court continued, "And in this agreement, you're waiving those rights, even though you do not yet know what your sentence in this case will be; do you understand that?" R. at 17–18. Gurley again responded that he understood. The district court then covered essentially the same ground again, emphasizing that it had authority to impose a sentence up to the statutory maximum, and confirming that Gurley understood he was giving up his right to appeal the sentence other than a sentence above the guidelines range.

At another point during the plea colloquy, the district court specifically focused on the indeterminacy of the sentence at the plea phase. The court told Gurley that, when deciding on his sentence, it would consider "any other relevant or similar conduct, whether or not that conduct is charged in this case," and Gurley confirmed his understanding. R. at 15. The court then stated,

> For these reasons, Mr. Gurley, I want you to understand that as a practical matter, as you stand before the Court today, you have no way of knowing with any certainty what the consequences of your plea will be, because I don't have the presentence report and I don't have the other information that I ultimately will have to consider in determining the sentence in this case and I don't know what the consequences of your plea will be; do you understand that?

*Id.* Gurley said that he understood.

After covering other aspects of the plea agreement, the district court found that Gurley was knowingly and voluntarily pleading guilty. The court therefore accepted the plea and set the matter for sentencing.

At the sentencing hearing, the major dispute was why Gurley had exchanged gunfire with his ex-girlfriend's new boyfriend. The presentence report gave two sides of the story. According to the ex-girlfriend, it appeared Gurley had been lying in wait for her at their old room, intending to shoot her, and he fired the first bullet at her. He then chased her and her boyfriend, firing more rounds in their direction. The boyfriend managed to fire one round back at Gurley before he and the girlfriend took cover in the main office, at which point Gurley fled. According to Gurley, however, the new boyfriend shot at him, and he returned fire only in self-defense.

The difference between the two stories mattered. If the court found that Gurley opened fire with intent to kill, as suggested by the girlfriend's version of events, it could justify a sentencing range calculated by cross-reference to the guideline for attempted murder. Factoring in all other adjustments and Gurley's criminal history, the guidelines range based on attempted murder was 168 to 180 months. Without considering attempted murder, the range was 151 to 180 months.

The government played a motel surveillance video for the court. Based on the video and other circumstances, the court found intent to kill. The court accordingly calculated the guidelines range as 168 to 180 months, and it sentenced Gurley to the top end of that range, corresponding to the statutory maximum.

This appeal timely followed.

II.    ANALYSIS

When the government moves to enforce an appeal waiver, we ask three questions: "(1) whether the disputed appeal falls within the scope of the waiver of

appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325.  Gurley concedes the first inquiry, *i.e.*, that this appeal falls within the scope of the waiver.

As to the second and third inquiries, Gurley presents essentially the same argument.  He claims he was not informed, ahead of the plea deal, that his guidelines calculation would ultimately turn on his intent when he fired his gun.  He accordingly says he received ineffective assistance of counsel before the plea, making the resulting plea involuntary (the second *Hahn* inquiry) and threatening a miscarriage of justice if this court were to enforce the appeal waiver (the third *Hahn* inquiry).

"Generally, we only consider ineffective assistance of counsel claims on collateral review." *Id.* at 1327 n.13.  There are "rare [ineffective assistance] claims which are fully developed in the record [and] may be brought . . . on direct appeal," *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995), but this is not one of them.  Gurley's phrasing of the argument shows he is trying to raise it *without* developing the record.  He says "there is reason to believe [his trial] counsel [who is not the same as his appellate counsel] materially misinformed him of the consequences of the plea and possible disposition," Resp. at 7, and "[b]ased on his attorney's arguments at sentencing, one does not have to strain to imagine that the advice [he] relied on when deciding to plead guilty was incomplete at best," *id.* at 9.  This framing of the issue arises from the fact that Gurley's trial counsel argued at sentencing that Gurley's discharge of his gun amounted to, at most, assault with a

5

dangerous weapon, rather than intent to kill.  Counsel did not argue self-defense, as Gurley claims he wanted.  Failure to argue self-defense, in Gurley's view, shows that counsel did not understand what was really at stake, both at sentencing and at the pre-plea phase.

These inferences from sentencing arguments do not substitute for a record. For example, we do not know what Gurley's trial counsel knew or reasonably should have known about likely sentencing factors at the time he advised Gurley about the plea deal, and we do not know what advice he actually gave to Gurley at that time.  If he did not give the advice that Gurley claims he should have received, we do not know enough of the circumstances to say whether that lack of advice amounted to ineffective assistance.  And we do not know if there is any evidence that Gurley would have rejected the plea if he had known his sentence could turn in part on his intent when he fired his gun.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]o satisfy the 'prejudice' requirement [of an ineffective assistance claim], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Thus, whether Gurley frames this as a question of voluntariness or a miscarriage of justice, it is not a reason to excuse him from his appeal waiver and allow him to argue ineffective assistance in this proceeding.[1]  Moreover, if Gurley also means to argue that his plea was involuntary, or that enforcing the appeal waiver

---

[1] The plea agreement does not forbid Gurley from raising ineffective assistance of counsel through a 28 U.S.C. § 2255 motion.

would be a miscarriage of justice, even if his trial counsel had given effective advice, we disagree.

As described previously, the plea agreement affirms that it was entered into knowingly and voluntarily, and the district court conducted a thorough plea colloquy—which included a specific warning that Gurley's uncharged conduct might factor into his sentence. *See Hahn*, 359 F.3d at 1325 ("When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to . . . whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily[, and whether the district court conducted] an adequate Federal Rule of Criminal Procedure 11 colloquy.").

As for a miscarriage of justice, Gurley must show that (1) the district court relied on an impermissible factor such as race, (2) there was ineffective assistance of counsel specifically as to the negotiation of the appeal waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *See Hahn*, 359 F.3d at 1327. "[This] list is exclusive." *United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008). Gurley does not claim his alleged misunderstanding about the focus of the sentencing hearing fits under any of these possibilities. We therefore find no potential miscarriage of justice.

### III.    CONCLUSION

We grant the government's motion and dismiss this appeal.

Entered for the Court

Per Curiam