**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 5, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

—————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAUL DAVID MITCHELL, II,

    Defendant - Appellant.

No. 25-5069
(D.C. Nos. 4:24-CV-00490-GKF-SH &
4:16-CR-00150-GKF-1)
(N.D. Okla.)

—————————————————————

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
—————————————————————

Before **BACHARACH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
—————————————————————

Paul Mitchell, a federal prisoner proceeding pro se,[1] seeks a certificate of

appealability (COA) to challenge the district court's denial of his 28 U.S.C. § 2255

motion. Because he fails to establish that reasonable jurists could debate the district

court's procedural ruling, we deny a COA and dismiss this matter.

**Background**

In December 2016, a grand jury indicted Mitchell on seven counts for his role in

two bank robberies in Tulsa, Oklahoma. Mitchell pleaded guilty to four counts, including

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] Although we liberally construe Mitchell's pro se filings, we do not act as his advocate or create arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

one for violating 18 U.S.C. § 924(c) by carrying and brandishing a short-barreled shotgun during and in relation to a crime of violence. In his Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, Mitchell stipulated to a sentence of 336 months, including 216 months on the § 924(c) count. Mitchell also waived his right to directly appeal his conviction and sentence, except for a sentence exceeding the statutory maximum, as well as his "right to collaterally attack the conviction and sentence pursuant to . . . § 2255, except for claims of ineffective assistance of counsel." R. vol. 1, 44. By signing and initialing the page with the waiver provisions, Mitchell acknowledged that his counsel "explained his appellate and post-conviction rights," that he understood his rights, and that he "knowingly and voluntarily waive[d]" his rights. *Id.*

At the plea hearing, the district court engaged in a colloquy with Mitchell. Mitchell verified that he had an opportunity to read and discuss the plea agreement with his attorney before he signed it and that he understood the terms of the agreement. Mitchell confirmed that no one made any improper promises or threats to persuade him to accept the agreement. Regarding the waiver of his appellate rights, Mitchell stated that he understood he was giving up most of his rights to appeal his sentence, including his collateral-attack rights. The district court explained to Mitchell that the waiver of his collateral-attack rights had "to do with [his] rights under the federal habeas corpus statute." R. vol. 3, 24. Mitchell affirmed that he discussed those rights with his attorney and understood what he was waiving. The district court accepted Mitchell's guilty plea.

Mitchell's presentence investigation report (PSR) classified Mitchell as a career offender, listed his total offense level at 31, and set his criminal history category at VI.

2

Thus, the PSR calculated a sentencing range of 308 to 355 months. Neither party objected to the PSR. At sentencing, the district court adopted the PSR in full and concluded that the stipulated 336-month sentence in the plea agreement was reasonable and did not undermine the statutory purposes of sentencing. It therefore sentenced Mitchell to 336 months in prison and five years of supervised release.

Mitchell filed a notice of appeal, which we dismissed, holding that the appeal was "within the scope of the appeal waiver, that he knowingly and voluntarily waived his appellate rights, and that enforcing the waiver would not result in a miscarriage of justice." *United States v. Mitchell*, 696 F. App'x 927, 928 (10th Cir. 2017).

Mitchell then moved under § 2255 to vacate, set aside, or correct his sentence, primarily arguing that he no longer qualifies as a career offender due to an intervening change in the law. The district court dismissed Mitchell's § 2255 motion, finding that it was barred by the collateral-attack waiver in his plea agreement, and denied him a COA.

Mitchell now seeks a COA from this court. *See* 28 U.S.C. § 2253(c)(1)(B).

**Analysis**

We may issue a COA under § 2253(c)(1) "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). In practice, this means showing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (cleaned up) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When, as here, "the district court denies a habeas petition on

3

procedural grounds without reaching the prisoner's underlying constitutional claim," we will issue a COA if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added). In this instance, we begin and end with the correctness of the district court's procedural ruling.

To determine the validity of a collateral-attack waiver, we ask "(1) whether the disputed claim falls within the scope of the waiver . . . ; (2) whether the defendant knowingly and voluntarily waived his [collateral-attack] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (cleaned up) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)).

At the first step, the district court found that Mitchell's § 2255 motion fell within the scope of his collateral-attack waiver because he specifically waived "the right to collaterally attack the conviction and sentence pursuant to . . . § 2255, except for claims of ineffective assistance of counsel." R. vol. 1, 285 (quoting *id.* at 44). And, the district court noted, he did not assert any ineffectiveness claims. This is straightforwardly correct. Indeed, Mitchell does not argue that reasonable jurists could debate this conclusion.

For the second inquiry, courts examine "whether the language of the plea agreement states that the defendant entered [it] knowingly and voluntarily" and "look for an adequate [Rule 11] colloquy." *Hahn*, 359 F.3d at 1325. The district court did so here,

finding its Rule 11 colloquy adequate and quoting from the plea agreement that Mitchell "knowingly and voluntarily agreed" to the collateral-attack waiver and signed just below that waiver. R. vol. 1, 290 (cleaned up) (quoting *id.* at 44). This is in keeping with our prior holding that Mitchell knowingly and voluntarily waived his direct-appeal rights. *Mitchell*, 696 F. App'x at 928.[2]

Mitchell nevertheless contends that his collateral-attack waiver was not knowing and voluntary because he would not have entered the plea agreement had he known that a favorable change in the law would render the career-offender enhancement inapplicable to him.[3] But even if Mitchell is correct about this change in the law, such a change subsequent to a plea does not render the plea unintelligent or involuntary. *See United States v. Green*, 405 F.3d 1180, 1190 (10th Cir. 2005) ("The Supreme Court has made it clear that a defendant's decision to give up some of his rights in connection with making a plea—including the right to appeal from the judgment entered following that plea— remains voluntary and intelligent or knowing despite subsequent developments in the law."); *United States v. Dominguez*, No. 23-8016, 2024 WL 277678, at *3 (10th Cir. Jan. 25, 2024) (unpublished) (noting that "a favorable change in the law after pleading guilty cannot unsettle the expectations established by a waiver of the right to appeal or to raise a

---

[2] We cite this and other unpublished cases for their persuasiveness. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[3] According to Mitchell, under *United States v. Taylor*, 596 U.S. 845 (2022), his prior conviction for attempted bank robbery—one of the convictions underlying his career-offender designation—is no longer a crime of violence.

collateral attack"). So reasonable jurists could not debate that Mitchell's collateral-attack waiver was knowing and voluntary.

Last, the district court considered whether enforcing the waiver would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1327. We recognize four situations where enforcing a waiver would result in a miscarriage of justice, but Mitchell invokes only two of those here: "where the sentence exceeds the statutory maximum[] or . . . where the waiver is otherwise unlawful." *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327).

First, according to Mitchell, his 216-month sentence for violating § 924(c) exceeds the statutory maximum because the district court incorrectly concluded that the statutory maximum on that count is life imprisonment.[4] Mitchell faces an uphill battle because "the maximum sentence for all § 924(c) offenses is life imprisonment." *United States v. Dominguez*, 998 F.3d 1094, 1114 (10th Cir. 2021); *see also* 18 U.S.C. § 924(c). To avoid this fact, Mitchell contends that a jury must find certain facts before a court can sentence a defendant to this statutory maximum. But Mitchell's argument is based on a misreading of Sixth Amendment caselaw. Only a "fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury[] and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *see also Alleyne v. United States*, 570 U.S. 99, 107–08 (2013) (extending this principle to facts that increase a mandatory minimum sentence). This principle has no application

---

[4] The district court also noted that Mitchell's sentence did not exceed the statutory maximums for his other offenses. Mitchell does not take issue with that reasoning, so we do not consider it further.

6

here because no fact could increase a statutory maximum of life imprisonment. So reasonable jurists could not debate the district court's conclusion that the miscarriage-of-justice exception for exceeding the statutory maximum does not apply here.

Second, Mitchell argues that his waiver is otherwise unlawful. But his arguments in support all relate to the lawfulness of his sentence. For instance, he contends that the district court imposed two consecutive sentences for a single crime of violence, contravening the Fifth Amendment's double-jeopardy clause. These arguments are insufficient because the unlawfulness miscarriage-of-justice exception "looks to whether the waiver is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." *United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) (cleaned up) (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007)). That is because "[t]o allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." *Id.* (quoting *Smith*, 500 F.3d at 1213). Thus, Mitchell fails to establish that reasonable jurists could debate the district court's conclusion that the unlawfulness miscarriage-of-justice exception does not apply here.

**Conclusion**

Because reasonable jurists could not debate the district court's decision to enforce Mitchell's collateral-attack waiver, we deny Mitchell's COA request and dismiss this matter.

Entered for the Court


Nancy L. Moritz
Circuit Judge